# Staunton

## WALLACE PARKER WADE v. COMMONWEALTH OF VIRGINIA.

September 2, 1960.

Record No. 5110.

Present, Eggleston, C. J., and Spratley, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Wayt B. Timberlake, Jr.* and *Humes J. Franklin,* for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

██ On September 25, 1958, Wallace Parker Wade, appellant, was found guilty of involuntary manslaughter as a result of an automobile accident in which Fred Melvin Dickerson received fatal injuries. The jury fixed his punishment at confinement in the penitentiary for a period of two years. The court, by its order of June 3, 1959, overruled defendant's motion to set the verdict aside and sentenced him to confinement in the penitentiary for a term of three years. The imposition of a three-year sentence instead of the two-year sentence in accordance with the verdict was a clerical error, and is of no importance in view of the decision in this appeal.

Defendant has resolved his assignments of error into the following questions for our consideration: Whether the trial court erred in (1) ruling that §§ 18-75.1, 18-75.2 and 18-75.3, Code 1950, as amended, apply to this felony prosecution; (2) in permitting E. W. Dickerson to testify with regard to the family of the deceased; (3) in refusing defendant's Instructions D and E; (4) in denying defendant's motion for a mistrial; (5) in ruling there was sufficient evidence to support a conviction.

The accident occurred about 11:20 p. m. on April 20, 1957, in Fishersville on Route 250, which runs east and west, and is a three-lane, hard-surfaced roadway at the point of collision. Elwood H. Furr was operating a Trailway bus westwardly in the right-hand lane and gave a signal "to make a smooth stop in plenty of time" in order to discharge passengers. There was no eastbound traffic at the time. Furr said that he observed a car approaching from the rear about a

city block distant and before he had come to a complete stop the car struck the rear of the bus "at a glancing blow". The hood "flew off the car and went on up the highway" in front of the bus. The right front door fell off on the highway about midway of the left side of the bus as the car passed. The automobile laid down 80 feet of skid marks which led up to debris on the road caused by the impact. It then continued on the left or south side of the highway for a distance of about 149 feet and ran into the "Glenn" house. The bus stopped in a distance of about one-half of its length. The car was practically demolished and the bus was damaged on the left rear. In the front seat of the automobile, which was a 1950 Buick four-door sedan owned by Wade, were Dickerson and Wade who were returning from a fishing trip. Wade received multiple fractures of the lower jaw, lacerations of the right cheek and in the hairline of the scalp, fractured ribs, leg injuries and several bruises around both hips. Dickerson died of injuries he sustained shortly after his arrival at the hospital.

The testimony is conflicting as to who was operating the automobile. Wade testified that he was not driving the vehicle; that he was asleep in the right-hand side of the car at the time of the collision, and that he remembered nothing that occurred from that time until about a week later in the hospital. Several witnesses stated that Dickerson was driving when he and Wade left The Willows and the Wayne-Way Restaurant, which establishments are located a short distance from the scene of the accident. Furr, the bus driver, said Wade's body was more or less just straight back of the steering wheel" and was slumped "more to the left of the steering wheel." He further testified that Dickerson was lying on the seat with his head at the right door and his feet on the floor. Shirley Ann Clemmer, a registered nurse who resided nearby and heard the crash, stated that when she arrived at the scene Wade was sitting up on the right side of the steering wheel leaning against it, and that Dickerson was on the right side of the vehicle with half of the trunk of his body hanging outside and his head resting in a gentleman's hands. Other witnesses placed the occupants of the car in various positions. Trooper H. H. Collier, who had a conversation with Wade at the hospital about an hour after the accident, stated that when asked who was driving the car, Wade pointed to himself. Mrs. Clemmer, who was among those present, corroborated this statement. Shortly thereafter Collier returned to Wade's room and repeated the question to Wade and he

replied·"I was." Collier, Mrs. Clemmer and· Dr. Harvey B. Ryder testified Wade appeared to be rational and conscious when Collier talked with him.

The testimony is also conflicting as to whether Wade consented to the taking of a blood test, but there is credible evidence to show that he gave such consent. His blood was analyzed in the office of the Chief Medical Examiner of the State Department of Health and was found to contain 0.15% alcohol. Over the objection of defendant, the attorney for the Commonwealth was permitted to comment on the blood test in his opening statement to the jury and to introduce into evidence the Chief Medical Examiner's certificate showing the results of the analysis. This action by the court constitutes the critical question in the case.

Section 18-75, Code 1950, and the amendatory sections 18-75.1, 18-75.2 and 18-75.3 pertinent to the issue are printed in the margin.

"§ 18-75. *Driving automobile, engines, etc., while intoxicated.*—No person shall drive or operate any automobile or other motor vehicle, car, truck, engine or train while under the influence of alcohol, brandy, rum, whiskey, gin, wine, beer, lager beer, ale, porter, stout or any other liquid beverage or article containing alcohol or while under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature.

"§ 18-75.1. *Use of chemical analyses to determine alcohol in blood; procedure; costs; evidence.*—In any criminal prosecution under § 18-75, or similar ordinance of any county, city or town, no person shall be required to submit to a determination of the amount of alcohol in his blood at the time of the alleged offense as shown by a chemical analysis of his blood, breath, or other bodily substance; however, any person arrested for a violation of § 18-75 or similar ordinance of any county, city or town shall be entitled to a determination of the amount of alcohol in his blood at the time of the alleged offense as shown by a chemical analysis of his blood or breath, provided the request for such determination is made within two hours of his arrest. Any such person shall, at the time of his arrest, be informed by the arresting authorities of his right to such determination, and if he makes such request, the arresting authorities shall render full assistance in obtaining such determination with reasonable promptness.

"Only a physician, nurse or laboratory technician, shall withdraw blood for the purpose of determining the alcoholic content therein. The blood sample shall be placed in a sealed container provided by the Chief Medical Examiner. Upon completion of taking of the sample, the container must be resealed in the presence of the accused after calling the fact to his attention. The container shall be especially equipped with a sealing device, sealed so as not to allow tampering, labelled and identified showing the person making the test, the name of the accused, the date and time of taking. The sample shall be delivered to the police officer for transporting or mailing to the Chief Medical Examiner. Upon receipt of the blood sample, the office of the Chief Examiner shall examine it for alcoholic content. ·That office shall execute a certificate which certificate shall indicate the name of the accused, the date, time and by whom the same was received and examined, and a statement that the container seal had not been broken or otherwise tampered with

Defendant contends that the certificate referred to in § 18-75.1 could be introduced only in a prosecution under § 18-75 or a similar ordinance of any county, city or town. The Commonwealth takes the position that the certificate was properly admitted to show the percentage of alcohol Wade's blood contained, because § 18-75.2 provides that it "shall * * * be admissible in any court or proceeding as evidence of the facts therein stated and the results of the analysis of the blood of the accused."

We had occasion to discuss §§ 18-75.1, 18-75.2 and 18-75.3 in the recent case of *Russell, Adm'x* v. *Hammond*, 200 Va. 600, 106 S. E.

and a statement of the alcoholic content of the sample. The certificate, attached to the container shall be returned to either the police officer making the arrest, the department from which it came, or to the clerk of the court in which the matter will be heard.

"Upon the request of the person who was given a chemical test of blood or breath, the results of such test shall be made available to him.

"An amount not to exceed fixe dollars to cover the costs of taking blood and making an analysis thereof shall be taxed as part of the costs of the case.

"Other than as expressly provided herein, the provisions of this section shall not otherwise limit the introduction of any competent evidence bearing upon any question at issue before the court. The failure of the accused to request such a determination is not evidence and shall not be subject to comment in the trial of the case.

"§ 18-75.2. *Report of results of analysis to be filed in Office of Chief Medical Examiner; admissibility of copy of certificate from such office.*—When any blood sample taken in accordance with the provisions of § 18-75.1 is forwarded for analysis to the Office of the Chief Medical Examiner, a report of the results of such analysis shall be made and filed in that office. Upon proper identification of such vial tube or container, the copy of such certificate as provided for in § 18-75.1 shall, when duly attested by the Chief Medical Examiner or any Assistant Chief Medical Examiner, be admissible in any court or proceeding as evidence of the facts therein stated and the results of the analysis of the blood of the accused.

"§ 18-75.3. *Presumptions from alcoholic content of blood.*—In any prosecution for a violation of § 18-75, or any similar ordinance of any county, city or town, the amount of alcohol in the blood of the accused at the time of the alleged offense as indicated by a chemical analysis of the accused's blood or breath in accordance with the provisions of § 18-75.1, shall give rise to the following presumptions:

"(1) If there was at that time 0.05 per cent or less by weight of alcohol in the accused's blood, it shall be presumed that the accused was not under the influence of alcoholic intoxicants;

"(2) If there was at that time in excess of 0.05 per cent but less than 0.15 per cent by weight of alcohol in the accused's blood, such facts shall not give rise to any presumption that the accused was or was not under the influence of alcoholic intoxicants, but such facts may be considered with other competent evidence in determining the guilt or innocence of the accused;

"(3) If there was at that time 0.15 per cent or more by weight of alcohol in the accused's blood, it shall be presumed that the accused was under the influence of alcoholic intoxicants."

2d 626, where we held, among other things, that the certificate of the Chief Medical Examiner executed under § 18-75.1 is not admissible under § 18-75.2 in a civil case. We pointed out that the three statutes "must be read together since they are related and the last two refer to the blood alcohol test made under § 18-75.1." At page 603 of the opinion we said:

"Section 18-75.1 is specifically made applicable to 'criminal prosecutions under § 18-75 (driving automobile, etc., while intoxicated) or similar ordinance of a county, city or town' * * *.

"The words 'in any court or proceeding,' [§ 18-75.2] when read in conjunction with the companion §§ 18-75.1 and 18-75.3, clearly refer to 'any court or proceeding' dealing with 'any criminal prosecution under § 18-75 or similar ordinance of any county, city or town * * *' such as is referred to in § 18-75.1.

\* \* \* \* \* \* \*

"Section 18-75.3 provides for certain presumptions arising out of the analysis made, pursuant to § 18-75.1, of the alcoholic content in the blood of an *accused* in a *criminal prosecution under* § 18-75."

It is a cardinal principle of law that penal statutes are to be construed strictly against the State and in favor of the liberty of a person. Such a statute cannot be extended by implication, or be made to include cases which are not within the letter and spirit of the statute. *Anderson* v. *Commonwealth*, 182 Va. 560, 566, 29 S. E. 2d 838. Sections 18-75.1, 18-75.2 and 18-75.3 refer to § 18-75 (driving automobile, etc., while intoxicated) or similar ordinance of any county, city or town. Wade was not prosecuted for operating an automobile under the influence of intoxicants, and we cannot extend the provisions of the statutes in question to include prosecutions for involuntary manslaughter or other criminal offenses. We, therefore, hold that the admissibility of the Chief Medical Examiner's certificate is limited to prosecutions under § 18-75 or similar ordinance of any county, city or town.

In view of this finding, it was error to give instruction No. 6 tendered by the Commonwealth, since it related to the blood test and was based upon the presumption in § 18-75.3.

During the course of the trial the Commonwealth called as a witness Emmett W. Dickerson, uncle of Fred M. Dickerson, the deceased. Over the objection of defendant, he was permitted to testify that Dickerson's family consisted of his wife, a daughter 11

years of age and a son age 7. The grounds for defendant's objection were that such testimony was not material or relevant to the issues involved and that the question could have no other purpose and object than to inflame the jury against Wade. We agree that this evidence was immaterial and irrelevant to the issues involved and, therefore, it was improper to admit it. Upon a retrial of the case, evidence of such character should not be admitted. See *Boggs* v. *Commonwealth*, 199 Va. 478, 486, 100 S. E. 2d 766.

▉ It is also the contention of defendant that the court erred in refusing his Instructions D and E. Instruction D defines criminal negligence in the identical phraseology as was set forth in an instruction given in *Bell* v. *Commonwealth*, 170 Va. 597, 615, 195 S. E. 675.

The form of Instruction E was not questioned and it reads:

"The Court instructs the jury that if, after hearing all the evidence in this case, they have a reasonable doubt as to whether Wallace Wade or Fred Dickerson was driving the Wade automobile at the time of the accident in which Fred Dickerson lost his life, they shall find a verdict of not guilty in this case."

The Commonwealth argues that both refused instructions were adequately covered in Instructions 2, 2A and 3 granted the Commonwealth and to have given them would have been repetitious. Instruction 2 told the jury that criminal negligence is an essential element of the offense of involuntary manslaughter and defined criminal negligence. Instruction 2A told them that if they believed from the evidence beyond a reasonable doubt that Wade was operating the vehicle; that he was guilty of criminal negligence, and that such negligence was either "the sole or a contributing proximate and efficient cause of the accident and death of the deceased" then they should find the accused guilty as charged. It also directed that if the jury did not believe beyond a reasonable doubt any one or more of the above elements, then they should find the accused not guilty of involuntary manslaughter.

Instruction No. 3 informed the jury that if they were "satisfied from the evidence beyond a reasonable doubt that the accused be guilty of the offense charged in the indictment, and that no reasonable hypothesis is or explanation can be found or given upon the whole evidence in the case consistent with the innocence of the accused, and at the same time consistent with the facts proved, they ought to find him guilty."

A person accused of a crime is entitled to instructions which pre-

sent the grounds of his defense from his point of view, provided they state correct legal principles and are not needlessly redundant. In *Carson* v. *Commonwealth*, 188 Va. 398, 411, 49 S. E. 2d 704 we said:

"The two instructions are not inconsistent and in a proper case both should be given. They simply define deliberation and premeditation from two points of view. *Honesty* v. *Commonwealth*, 81 Va. 283; *Horton's Case, supra;* Virginia and West Virginia Digest, (Michie) Vol. 5, sec. 31, p. 388. It follows that the trial court committed error in refusing to grant the instruction as requested by defendant. * * *."

Instructions D and E were not inconsistent with instructions given on behalf of the Commonwealth. They set forth defendant's theory of the case in a positive way and the refusal of them constituted error under the facts presented.

Defendant next contends that the trial court erred in denying his motion for a mistrial because of improper remarks made by the commonwealth's attorney during closing argument to the jury.

According to the stipulation of counsel which was made a part of the record, the commonwealth's attorney "argued to the jury that there was no evidence in this case that the defendant, Wade, had denied to anyone since the happening of the accident that he was driving the automobile." Counsel for defendant objected to this statement on the ground that the argument was improper and moved the court to declare a mistrial of the case. The court overruled defendant's motion, but sustained his objection to that line of argument. The jury was admonished not to consider that phase of the argument.

Immediately after counsel for defendant excepted to the court's ruling, the commonwealth's attorney, in the presence of the jury, inquired "if the Court meant that he could not argue that the defendant had failed to deny to the bail commissioner or anyone else before the trial of this case that he was driving the automobile." Whereupon counsel for defendant renewed his motion for a mistrial on the grounds that the statement in the presence of the jury was improper. The motion was again overruled and defendant by counsel excepted to the ruling of the court.

Since this case will be reversed and remanded for a new trial for errors heretofore pointed out, we do not consider it necessary to say more than that the commonwealth attorney's remarks complained of were definitely improper.

There is no merit in defendant's final contention that the

trial court erred in holding the evidence was sufficient to support a conviction. Although the evidence was conflicting, there was ample credible evidence offered by the Commonwealth upon which the jury could have found defendant guilty as charged in the indictment.

For the reasons assigned, the judgment appealed from is reversed and the case is remanded for a new trial.

*Reversed and remanded.*