## Richmond

CLAUDIA ELSIA JACKSON

V.

COMMONWEALTH OF VIRGINIA

Record No. 831125.

October 12, 1984.

Present: All the Justices.

*W. Barrett Disney, Jr.,* for appellant.

*Robert B. Condon, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

Claudia Elsia Jackson was convicted, in a jury trial, of possession of heroin with intent to distribute. Her penalty was fixed at 25 years in prison and a $5,000 fine.

The Richmond Bureau of Police had received a tip that on August 30, 1982, Jackson would be in possession of a large amount of heroin. Jackson was placed under surveillance. Jackson and another woman came out of a house, got into a car, and drove away. The officers followed in their car for the distance of a block then pulled up beside Jackson and identified themselves as police officers. Jackson sped away, with the police in pursuit. Jackson drove two blocks and stopped in front of the home of one Ruth Edmonds.

The two detectives who were in pursuit approached Jackson's vehicle. One of the detectives attempted to get Jackson out of the car; a struggle ensued. Jackson yelled to her companion, "Go get Baby Sis." "Baby Sis" was a name used to refer to Ruth Edmonds, the resident of the house to which Jackson drove after the detectives announced their presence.

In the course of the struggle, one of the detectives noticed Jackson take a "Marlboro" cigarette pack from her clothing and place it beneath the car seat. The pack was retrieved and found to contain eight grams of 90% pure heroin with a street value of approximately $40,000. Moreover, $2,600 in cash was found on Jackson though she said she had not worked in six years.

At trial, Jackson called Ruth Edmonds as a defense witness. On direct examination, Edmonds did little more than state that someone knocked at her door and describe what she saw as she looked from her door.

On cross-examination, the Commonwealth asked Edmonds whether she knew one Johnny Shelton; Edmonds answered, "Yes." The Commonwealth then asked whether Shelton owned the house in which she lived; Edmonds answered, "No." The Commonwealth asked whether Shelton was Edmonds' boyfriend; Edmonds answered, "No." The Commonwealth asked whether Edmonds had seen Shelton near the scene of the arrest; Edmonds answered, "No."

Failing to establish any substantial link between Edmonds and Shelton, the Commonwealth next attempted to establish a link between Jackson and Shelton. The Commonwealth asked Edmonds whether Shelton and Jackson had planned to meet at Edmonds' house on the night of Jackson's arrest. Edmonds responded, "She wasn't going to meet him at my house, no." Edmonds admitted that Shelton visited Edmonds' house on the average of once per month but Edmonds denied that Shelton and Jackson had ever been together at Edmonds' house. Indeed, Edmonds denied ever seeing Jackson and Shelton together. In short, there was an absolute failure in the evidence to connect Shelton and Jackson.

Despite the lack of any link between Jackson and Shelton, after Jackson rested, the trial court permitted the Commonwealth to call one of the arresting officers as a rebuttal witness. The officer testified that while he was struggling with Jackson he saw Shelton drive by the scene of the arrest, pause for a second, then speed away. The officer then testified that Shelton was listed in police files as "a Class I violator" and that recently Shelton had been sentenced to 30 years in prison for distribution of 90% to 100% pure heroin with a street value of approximately $100,000.

Jackson's counsel objected to the officer's testimony but the objections were overruled. On appeal, Jackson contends it was error for the trial court to permit the Commonwealth to inject Shelton's name during cross-examination and to permit the officer's rebuttal testimony. We think the second point disposes of this appeal.

Jackson argues that the testimony concerning Shelton had nothing whatever to do with proving whether she possessed heroin with intent to distribute. According to Jackson, the reference to Shelton and his past misdeeds was nothing more than an attempt to prove her guilt by her association with a woman, Edmonds, who from time to time associated with Shelton. Jackson submits that the officer's testimony was irrelevant, immaterial, and prejudicial.

The officer's testimony was all those things. The testimony was irrelevant because it did not tend to prove or disprove that Jackson possessed heroin with the intent to distribute. It was immaterial because there was no issue in the case concerning a possible connection between Jackson and others with regard to distributing heroin. It was prejudicial because once admitted into evidence it made Jackson's one witness appear to be in contact with criminals and thus cast a bad light upon that witness's testimony.

Though the correctness of Jackson's argument ought to be self-evident, Jackson nonetheless cites pertinent authority. In *L.H. Smith* v. *Commonwealth*, 223 Va. 721, 292 S.E.2d 362 (1982), defendant was convicted of selling LSD, a controlled substance. At trial, the court had allowed a Commonwealth witness to testify as to the effects of LSD on the human body. On appeal, we reversed on the ground that evidence concerning the effects of LSD had nothing whatever to do with whether the particular defendant sold the drug. We said that to permit such evidence "diverts the jury from its principal inquiry and injects an element of passion into the trial prejudicial to the accused." 223 Va. at 724, 292 S.E.2d at 364. To similar effect is *Wade* v. *Commonwealth*, 202 Va. 117, 116 S.E.2d 99 (1960). There, defendant had been convicted of involuntary manslaughter. During trial, the court permitted a witness to testify concerning the dead man's family. Though we reversed for other reasons we addressed the issue of the propriety of the disputed testimony and concluded that it should not have been admitted into evidence. We agreed with the defendant that such evidence was irrelevant and immaterial.

The Commonwealth argues that its questioning of Edmonds and the rebuttal testimony of the arresting officer were meant to establish bias on Edmonds' part. The Commonwealth submits, citing *Shanklin* v. *Commonwealth*, 222 Va. 862, 284 S.E.2d 611 (1981), that it should have the broadest possible latitude in establishing bias.

If the Commonwealth's questioning of Edmonds and the officer was designed to show bias on the part of Edmonds, it failed. At the conclusion of Edmonds' testimony, the Commonwealth had established no more than that Edmonds knew Shelton and that he visited with her approximately once per month. Indeed, Edmonds specifically denied knowing that Shelton was involved with drugs. She was asked "Ever know him to have drugs?" She replied, "No. I don't know him in that way." There is nothing in Edmonds' testimony to suggest that she was inclined to testify in favor of Jackson or against the Commonwealth.

Further, the officer's testimony failed to establish or even suggest any bias on Edmonds' part. It merely established that Shelton was a known drug violator. The claim that the disputed testimony was designed to show bias does not serve to make proper the officer's immaterial, irrelevant, and prejudicial testimony.

---

██ Nor is the Commonwealth correct in asserting that Jackson waived her objections to the officer's testimony by asking questions about Shelton on cross-examination during the rebuttal phase of the case. The Commonwealth relies for this argument upon *Saunders* v. *Commonwealth*, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970), where we wrote that:

> The rule is that where an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error.

The Commonwealth says the *Saunders* rule applies because even though Jackson's counsel objected to the rebuttal testimony of the arresting officer, he then asked cross-examination questions which raised virtually the same material that had been discussed on direct.

The Commonwealth misreads *Saunders*. That case does not address a situation where a defendant cross-examines a prosecution witness. *Saunders* concerns a situation where the defendant introduces into his own case evidence which he objected to in the Commonwealth's case.

The facts in *Saunders* highlight the distinction. We said there that:

> After reference had been made *during the Commonwealth's case* to several of the other crimes, the defendant *introduced evidence* that he had been arrested for escaping jail and had been tried and sentenced for unlawful flight to avoid prosecution.

211 Va. at 401, 177 S.E.2d at 639 (emphasis added). We went on to note that defendant's counsel conceded during oral argument that he had used the tactic of introducing the evidence of other crimes to put into the jury's mind that defendant had already served a lot of time.

Here, it cannot fairly be said that Jackson actually "introduced" evidence concerning Shelton. Jackson's counsel, as a result of the court's ruling, was compelled to ask on cross-examination questions pertinent to what had been stated on direct. Put another way, Jackson's counsel asked questions on cross-examination nar-

rowly confined to the scope of what had been raised on direct. Moreover, the officer's answers to defense counsel's cross-examination questions were plainly used by the officer to reinforce what he had said on direct. Were we to adopt the position urged by the Commonwealth, a defendant would either lose the right to cross-examination or the right to appeal rulings admitting evidence on direct. The defendant would have to elect which right to pursue. That has not been the state of the law and we will not make such a change.

For the foregoing reasons, the judgment of the trial court will be reversed and the case remanded for a new trial should the Commonwealth so choose.

*Reversed and remanded.*