DENNIS DELGADO McCAIN

v.

COMMONWEALTH OF VIRGINIA

No. 1633-85

Decided October 6, 1987

COUNSEL

Luis A. Abreu (Clement & Wheatley, on brief), for appellant.

M. Katharine Spong, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — Dennis Delgado McCain was convicted in a jury trial in Bedford County Circuit Court on December 4, 1985, of first degree murder and use of a firearm in the commission of a felony. He was sentenced to life imprisonment and two years.

In this appeal McCain raises two issues: (1) whether evidence of the victim's family life was admissible in the Commonwealth's case-in-chief, and (2) whether the trial court erroneously limited his right to impeach the Commonwealth's chief witness by reference to his juvenile record. For the reasons stated below, we find no reversible error and affirm McCain's convictions.

While some of the facts are in dispute, we recite them in the light most favorable to the Commonwealth. *See Sutphin v. Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985). The primary incriminating evidence at trial was provided by James Taylor, a co-defendant and friend of McCain's. He gave the following account describing the events immediately preceding and following the death of the victim, Andre Charlton. On January 25, 1982, Charlton met with Taylor, McCain and McCain's girlfriend, Sandra Knott, to settle a dispute concerning a watch. These four individuals drove around in McCain's car drinking beer and smoking marijuana. Later, when they were standing around the car, Taylor saw McCain beat Charlton into a state of unconsciousness with an ax handle. McCain and Taylor then placed Charlton into the car and drove to No Business Mountain (also known as Bear Mountain). While en route to the mountain, Taylor testified that McCain stated that he was going to kill Charlton because if he did not, Charlton's brothers and the police

would learn of the beating and "it would bring things down on him."

Once on the mountain, Taylor testified that Charlton regained consciousness and McCain told Charlton to lie down on the ground. McCain then shot Charlton five times, poured a can of gasoline on Charlton's body and ignited it. Taylor testified that Charlton was moaning at this time. McCain and Taylor then pushed Charlton's body over the mountainside and left.

Taylor testified that the next day he, Knott, and McCain were questioned by a police officer about Charlton's disappearance. Believing that they were suspects, they returned to the mountain to bury Charlton's body. In order to avoid identification of the body, Taylor and McCain decapitated the body. Charlton's head was thrown into a dumpster and the headless body was buried in a shallow grave on Knott's property.

In April, 1985, after Taylor gave statements to the police, he showed the police the grave and identified it as the place where Charlton's body was buried. A headless skeleton was exhumed and examined by the Deputy Chief Medical Examiner for the Western District of Virginia. The medical examiner was unable to make a positive identification of the skeleton because of the absence of the skull, the jaw bone and the facial bone. He was, however, able to state that the skeleton was consistent with a chest x-ray previously taken of Charlton. In his opinion, the cause of death was multiple gun shot wounds. The medical examiner's opinion was based on all the evidence available, including his examination of the skeleton. McCain does not contest the medical examiner's opinion as to identification or the cause of death.

Oretha Payne, Charlton's mother, testified over McCain's objection that she knew something was wrong when her son disappeared because he failed to return home and failed to telephone her. She testified that their relationship was close and that he customarily told her where he would be and when he would return home. Payne testified that on the morning of his disappearance, Charlton cooked breakfast and performed some household chores for her because she had a sprained ankle. Based upon this testimony, the Commonwealth in its argument to the jury, characterized Charlton as a "mama's boy."

McCain testified in his own defense. He maintained that he was first attacked by Charlton and struck him in response to that attack. He testified that he was injured, "on alcohol" and not sure what happened when Charlton was shot. He did not deny shooting Charlton and did not specifically admit it: "But I'm not saying it's not possible that I may not have. I don't know. I can't say I did and that I didn't . . . . I'm not going to say I did do it and I didn't do it. And I'm not going to say I didn't do it if I didn't do it. Well, that doesn't make any sense."

McCain testified that Taylor ignited the body and subsequently decapitated it and that McCain participated in the burial because he was frightened due to his involvement in the death.

## I.

### Evidence of the Victim's Family Life.

The Commonwealth, relying on *Epperly v. Commonwealth*, 224 Va. 214, 294 S.E.2d 882 (1982), asserts that it was entitled to introduce evidence of Charlton's conduct on the morning he was last seen, and evidence that he would tell his mother where he was going and when he would return home "because the evidence was probative of the *corpus delicti.*" The Commonwealth argues that such evidence is distinguishable from evidence of good character, peaceable nature and family relationships of the deceased which are ordinarily inadmissible in the Commonwealth's case-in-chief. *See Wade v. Commonwealth*, 202 Va. 117, 123, 228 S.E.2d 99, 103 (1960); *Thomason v. Commonwealth*, 178 Va. 489, 499-500, 17 S.E.2d 374, 378 (1941). The Commonwealth's reliance on *Epperly* is misplaced. In *Epperly*, the victim's body was never found and the trial court permitted evidence of the victim's character, traits, habits and relationships to prove by circumstantial evidence that the victim was dead as a result of the criminal act of another. The Supreme Court found that this evidence was relevant to negate "every reasonable hypothesis of innocence, including suicide, natural death, accidental death, justifiable or excusable homicide, or continuing life *in absentia.*" *Epperly*, 224 Va. at 230, 294 S.E.2d at 891.

In the present case, the Commonwealth was not faced with the dilemma of the undiscovered body of the victim as it was in *Epperly*. Taylor's testimony negated any hypothesis of suicide,

natural death, accidental death, justifiable or excusable homicide or continuing life *in absentia.* In addition, the medical examiner, while unable to make a positive identification of the skeleton, was able to conclude that it was consistent with a chest x-ray previously taken of Charlton. Finally, McCain did not contest either the identity of the skeletal remains as that of Charlton or that Charlton's death was the result of the criminal act of another. McCain's position was that either Taylor was guilty of the murder or that McCain was unable to remember just how or by whom Charlton was murdered. For these reasons, the evidence of Charlton's conduct on the morning he was last seen and particularly his relationship with his mother was neither material nor relevant to the disputed issue of who killed Charlton and was improperly admitted into the evidence at trial.

Without conceding that the trial court erred in admitting this evidence, the Commonwealth argues that any error was harmless. We agree.

Charlton was beaten with an ax handle into a state of unconsciousness, shot five times, and, while moaning, was covered with gasoline and burned. His body was pushed down the side of a mountain, later decapitated and buried in an unmarked grave. We find beyond a reasonable doubt, as the Commonwealth maintains, that in view of the highly inculpatory and inflammatory nature of this evidence, reference to the victim's relationship with his mother and his conduct on the morning he was last seen by her was clearly inconsequential and innocuous and thus, harmless error.

## II.

### Impeachment by Use of Juvenile Record.

During direct examination of Taylor, the Commonwealth's Attorney asked whether he had ever been convicted of a felony or a crime involving moral turpitude. He replied that he had not. Counsel for McCain then requested permission to cross-examine Taylor concerning his juvenile record. The trial court denied this request. Several days later the trial court reconsidered its ruling and held that since the jury might have been misled by the previous questions and answers, McCain's counsel would be permitted to cross-examine Taylor concerning his juvenile record. The fol-

lowing examination occurred:

Q. You testified previously in response to a question from the Commonwealth that you had not been convicted of a felony or a crime involving moral turpitude.

A. Yes, sir.

Q. It is true, though, is it not, that you have previously been before the Juvenile Court in the City of Lynchburg and that you were found to come within the purview of the juvenile court law on 1979 charges for offenses which if committed by an adult, would be felonies or misdemeanors involving moral turpitude, is that not true?

A. Yes, sir.

The Commonwealth's Attorney then conducted the following examination of Taylor:

Q. Now, Mr. Taylor, it still remains true that you have not been convicted of a felony, is that correct?

A. Yes, sir.

Q. And it still remains true that you have not been convicted of a misdemeanor involving moral turpitude, is that correct?

A. Yes, sir.

Q. And the incidents which Mr. Shreve referred to, did they involve two incidents of you going into a neighbor's house in some apartment complex and taking some food out of the refrigerator?

A. Yes, sir.

These acts, if committed by an adult, would have constituted breaking and entering, a felony, and larceny, a misdemeanor involving moral turpitude. McCain maintains that the court erred in

limiting his cross-examination of Taylor. Specifically, he maintains that he should have been permitted to use the phrase "not innocent" rather than "within the purview of the juvenile court law." The Commonwealth argues that if any distinction exists between these two phrases, it is, at most, academic. We disagree. Once it is established that McCain had the right to cross-examine Taylor by referring to his juvenile record, that right included an effective cross-examination and not one limited so as to convey to the jury that "within the purview of the juvenile court law" was something other than a finding of guilty.

In *Davis v. Alaska*, 415 U.S. 308 (1974), the United States Supreme Court held that "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.* at 320. Our Supreme Court, prior to *Davis*, held that the refusal to permit cross-examination of a witness to show prior juvenile felony adjudication, as a general attack on credibility, was proper. *Kiracofe v. Commonwealth*, 198 Va. 833, 845, 97 S.E.2d 14, 21-22 (1957). Following *Davis*, our Supreme Court in *Fulcher v. Commonwealth*, 226 Va. 96, 306 S.E.2d 874 (1983), relying on *Davis*, "assume[d] without deciding the trial court improperly limited defendant's cross-examination" of the Commonwealth's chief witness concerning his juvenile record. *Fulcher*, 226 Va. at 99, 306 S.E.2d at 876. This error was found to be harmless based on the facts of that case.

At the time of the *Kirocofe* decision, Code § 16.1-179 was in force. That statute provided for the confidentiality of juvenile records and did not speak in terms of guilt but rather in terms of adjudication. The statute was repealed in 1977 and replaced with Code § 16.1-308. Code § 16.1-308 speaks in terms of "a finding of guilty." While *Fulcher* refers to *Kiracofe* and implies its continuing viability, we need not decide that in this case. We are convinced that the trial court erred in limiting the cross-examination of Taylor, the Commonwealth's chief witness, to questions which did not include "not innocent" or "guilty" because the phrase "within the purview of the juvenile court law" did not effectively convey to the jury that Taylor had, in fact, been found "guilty" by the juvenile court.

We further find, however, that this error was harmless beyond a reasonable doubt. From the questions and answers related above it is clear that the jury was informed that Taylor had been involved with the juvenile court and that that involvement concerned offenses which, if committed by an adult, would have constituted a felony and a misdemeanor involving moral turpitude. In addition, the jury was informed that these incidents involved going into a neighbor's home and stealing food. The effect of this information on the jury in its consideration of Taylor's testimony could not be diminished by not knowing the technical difference between an adjudication of being "within the purview of the juvenile court law" and a finding of "not innocent."

In addition, the totality of the evidence against McCain, including his own admitted involvement in Charlton's murder, was sufficient to establish his guilt beyond a reasonable doubt in the minds of the jury.

For these reasons the convictions are affirmed.

*Affirmed.*

Keenan, J., and Moon, J., concurred.