COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Chafin and Malveaux
Argued at Salem, Virginia


KATHERINE NICOLE DELLIS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0341-17-3                      JUDGE TERESA M. CHAFIN
                                                    APRIL 24, 2018

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
                         James J. Reynolds, Judge

         Arthur J. Donaldson (George P. Hunt, III; Davis, Davis, Davis &
         Davis, on brief), for appellant.

         Victoria Johnson, Assistant Attorney General (Mark R. Herring,
         Attorney General, on brief), for appellee.


        In the Circuit Court of Franklin County (trial court), Katherine Nicole Dellis (appellant)

entered a conditional guilty plea for concealing a dead body in violation of Code § 18.2-323.02.

On appeal, she contends the trial court erred in denying her motion to dismiss the charge at issue

because a fetus that died in the womb does not fall within the definition of "dead body" as

contemplated by the statute.  We disagree and affirm her conviction.

                                    I.  BACKGROUND

        Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.  "In accordance with established principles of appellate review, we state the facts in

the light most favorable to the Commonwealth, the prevailing party in the trial court[, and]

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004).

Appellant purportedly suffered a placental abruption that resulted in the death of her unborn child. Appellant birthed the deceased fetus in her home, losing consciousness during the labor process. She awoke to find the deceased fetus next to her on the bathroom floor. Appellant cut the umbilical cord, wrapped the fetus in a bathmat, placed the bathmat inside a trash bag, and placed that trash bag inside a larger trash bag. Appellant's father, unaware of the bag's contents, subsequently disposed of the trash bag in a public dumpster in Franklin County.

Appellant was later admitted to the emergency room, and after examining and speaking with appellant about whether she had given birth, the treating physician contacted the police. Law enforcement subsequently obtained and executed a search warrant. Upon recovering the fetus from the dumpster, an autopsy was performed by Assistant Chief Medical Examiner Dr. Eli Goodman.

Dr. Goodman determined the gestational age of the fetus to be between thirty to thirty-two weeks, which he testified was considered a viable human fetus. He testified that a physical examination of specific characteristics allowed him to determine when and how the fetus died. Specifically, Dr. Goodman testified that his examination of the lungs and an associated blood vessel showed that they had not been exposed to air, meaning that the fetus died in the womb. He further testified that, in the case of an in utero death, the condition of the fetus's skin provides temporal context as to when the death occurred. Here, he determined that the fetus died "less than several days" before appellant gave birth.

Appellant was charged with concealing a dead body in violation of Code § 18.2-323.02. She moved to dismiss the charge because the statute refers to a specific definition of "dead body" found in Code § 32.1-249, and she argued that the codified definition does not encompass a fetus

that died in the womb. The Commonwealth argued that a fetus was consistent with the definition of a dead body as referenced in the statute and that the medical examiner's testimony supported that contention because the examiner was able to determine from the condition of the fetus that it had died within "several" days of appellant giving birth. The trial court denied the motion to dismiss, stating that the fetus was a human body that fit within the statutory definition of "dead body."

Appellant entered a conditional guilty plea, preserving for appeal the ruling on her motion to dismiss.

## II. ANALYSIS

Appellant argues that when reading the entirety of Code § 32.1-249, the language distinguishes a dead body from a fetus by defining "dead body," "fetal death," and "live birth" as separate terms, and by identifying them separately when defining a "final disposition." Appellant further contends that because a fetus "was never alive, . . . it cannot be dead." The Commonwealth argues that despite being separate terms, the words dead body and fetus are used together as "phrases of inclusion;" and the processes for reporting, handling, and disposing of a dead body and a fetus are nearly identical, meaning that the legislature intended that a fetus be treated the same as a dead body.

Appellant's assignment of error presents an issue of pure statutory interpretation. "Statutory interpretation is a question of law which we review *de novo*, and we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." Wright v. Commonwealth, 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009).

In our review, "we construe a statute 'with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a

construction that will render it harmonious with that purpose rather than one which will defeat it.'" Hines v. Commonwealth, 59 Va. App. 567, 573, 721 S.E.2d 792, 795 (2012) (quoting Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003)).

> When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

Kozmina v. Commonwealth, 281 Va. 347, 349-50, 706 S.E.2d 860, 862 (2011) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)). "Additionally, 'the plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.'" Id. at 350, 706 S.E.2d at 862 (quoting Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007)).

"It is a cardinal principle of law that penal statutes are to be construed strictly against the [Commonwealth]" and "cannot be extended by implication, or be made to include cases which are not within the letter and spirit of the statute." Wade v. Commonwealth, 202 Va. 117, 122, 116 S.E.2d 99, 103 (1960). However, "we will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein." Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)). "In short, courts must defer to the clear language enacted by the General Assembly and its clear purpose for enacting or amending a statute." Grafmuller v. Commonwealth, 57 Va. App. 58, 62, 698 S.E.2d 276, 278 (2010).

Code § 18.2-323.02 prohibits the concealment of a "dead body, as defined in [Code] § 32.1-249." Because "dead body" is a term defined by statute, we look to the plain meaning of

the words used in that definition. Code § 32.1-249(1) defines "dead body" as "a human body or such parts of such human body from the condition of which it reasonably may be concluded that death recently occurred." On its face, this definition is not ambiguous, and it is apparent from the plain language that the definition can encompass a stillborn fetus.

The definition is based first on identification or classification of the body or parts thereof as human, and second on observable signs that indicate a recent death. A trained individual, such as a medical examiner, is capable of identifying a recently deceased human fetus and then determining a likely timeframe of its demise. As was the case here, the medical examiner performed an autopsy on the fetus and was able to determine that it was, in fact, a human fetus and that it had recently died, albeit in the womb. The medical examiner was further able to narrow down the timeframe for when death occurred to within a matter of days.

Because the plain language of the definition is unambiguous, we do not need to refer to additional language elsewhere in the statute to interpret the definition. However, we note that the distinctions drawn by appellant are of little consequence when the statutory scheme is viewed as a whole. Appellant argues that including definitions for "fetal death" and "live birth" within the same statute implies that the legislature intended to distinguish between a dead body and a fetus, particularly where other subsections and the definition of "final disposition" refer to "a dead body or fetus." Code § 32.1-249(4). When reviewing additional statutes in the chapter, any such distinction becomes a distinction without a difference.

Within Title 32.1, Chapter 7 deals with "Vital Records." The various sections in Chapter 7 outline administrative procedures relating to incidents of birth and death. Multiple sections use the phrase "dead body or fetus" when setting forth their requirements. See, e.g., Code §§ 32.1-265 (regarding permits for transit, disinterment, or reinternment); 32.1-274 (regarding record-keeping). There are also separate sections pertaining to the filing of death certificates,

Code § 32.1-263, and fetal death reports, Code § 32.1-264. Even though the statutes identify both terms in the sections that apply simultaneously to a "dead body" or "fetus," the requirements and procedures are largely the same when applied to each one. This signals that the legislature intended both to receive the same treatment. Having separate sections for death certificates and fetal death reports simply recognizes that there may be some incidents of vital record-keeping unique to each category of decedent.

Moreover, for readily apparent reasons, finding that a fetus is not a dead body within the meaning of the statute "would lead to an absurd result." Wright, 278 Va. at 759, 685 S.E.2d at 657. In enacting Code § 18.2-323.02, the legislature sought to punish the transport, secreting, concealment, or alteration of human remains, and it did so expressly as a deterrent to discourage the concealment of possible criminal activity or impeding the investigation of such.[1] However, the statute was also likely enacted to prevent negative public health consequences that could result from improper disposal of a human body. As the Supreme Court has observed, "[t]he burial of the dead is a matter of public health and public necessity." Hall v. Stewart, 135 Va. 384, 398, 116 S.E. 469, 474 (1923). To find that the remains of a fetus do not raise the same public health concerns as other recently deceased human remains would be an irreconcilable proposition. Similarly, to find that any of the proscribed acts could not implicate unlawful activity simply because the object was a fetus would be a "curious, narrow, or strained construction" that would frustrate the larger purposes of the criminal statute.

Finally, appellant invites this Court to consider, in light of Virginia common law and civil precedent, how a fetus can be a dead body "if life has never occurred." On the narrow issue

---

[1] The prohibited acts must be done "with malicious intent and to prevent detection of an unlawful act or to prevent the detection of the death or the manner or cause of death." Code § 18.2-323.02.

- 6 -

before this Court, such an inquiry is neither necessary nor relevant to the disposition of the case at hand. For this particular definition as applied to this particular statute, the relevant inquiry is confined to observable facts that describe the current condition of an object. As discussed above, the medical examiner was able to examine the fetus and determine that the condition required by the definition was met. Thus, the statute was satisfied and no further inquiry was required.

## III. CONCLUSION

Because it is clear from the plain meaning of the definition itself that a stillborn fetus can fall within the applicable statutory definition of a dead body, and because it is clear that the legislature intended to treat it as such, the trial court did not err in denying the motion to dismiss.

<u>Affirmed.</u>