# Richmond

## Robert L. McKinney v. Commonwealth of Virginia.

June 13, 1966.

Record No. 6204.

Present, All the Justices.

*Allen J. Gordon* for the plaintiff in error.

*William P. Bagwell, Jr., Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

Buchanan, J., delivered the opinion of the court.

A grand jury in the circuit court returned an indictment against Robert L. McKinney, referred to herein as McKinney or defendant. It charged him with the embezzlement and grand larceny of $19,500, "certain moneys" belonging to Bennie William Pierce, Jr. On his

trial a jury found him guilty and fixed his punishment at six months in jail and $1,000 fine. He was sentenced according to the verdict and we granted him a writ of error.

The defendant contends, first, that he was not guilty of embezzlement under the facts of the case. There was little, if any, conflict in the evidence on material points and it was as follows:

On January 7, 1963, the defendant entered into a written contract with Bennie W. Pierce, Jr., and wife for the sale and purchase of properties. By the contract McKinney agreed to sell and the Pierces agreed to buy a described parcel of land upon which McKinney was to build a three-bedroom brick house according to plans and specifications agreed to and initialed by the parties.

The purchase price for the property so to be conveyed to the Pierces was $20,200, to be paid as follows: $10 in cash, $1,990 at the time of settlement, stated in the contract to be on or before April 15, 1963, "or as soon thereafter as title can be examined and papers prepared, allowing a reasonable time to correct any defects reported by the title examiner;" and $18,200 by title to the property of the Pierces on Myrtle Avenue, in the city of Chesapeake, "which property is to be deeded to Seller [McKinney] before construction is started."

By deed dated January 8, 1963, and recorded January 11, 1963, the Pierces conveyed the Myrtle Avenue property to McKinney with general warranty for $10 "cash in hand paid, and other good and valuable considerations."

By deed dated October 18, 1963, and recorded October 21, 1963, McKinney conveyed this Myrtle Avenue property to Dennis J. Boyd, Jr., for $18,900. McKinney testified that the net amount he received on the sale was about $17,000.

McKinney did not at the time of the contract with the Pierces have title to the tract which he was to convey to the Pierces, containing about one and one-half acres on Forbes Road. It was part of a larger tract which he had a contract to buy and he paid $4,092 to get title to it in order to convey it to the Pierces. The house built by him for the Pierces on this lot was not completed by the closing date of April 15, 1963, and the record does not show the date it was conveyed to the Pierces. They moved into it on October 2, 1963, and they testified that the house was then satisfactorily built and they were satisfied with the construction. They did not pay the defendant the $1,990 which they contracted to pay at the time of

settlement. Mr. Pierce testified that he used this amount in finishing the house.

On October 3, 1963, McKinney borrowed $20,000 from Residential Industrial Loan Company, for which he gave a note in the sum of $21,846.80 and executed and delivered a deed of trust on the Forbes Road property to secure its payment. With the proceeds he paid off prior liens amounting to about $12,000, and testified that he used the balance in building the house, which cost him, he said, a great deal more than he expected.

The Pierces did not find out about this deed of trust until they were informed about it by letter of March 13, 1964, from the Residential Industrial Loan Company, which threatened foreclosure unless payments then due were made. To avoid foreclosure the Pierces borrowed $20,000 and gave a note for that amount plus interest and cost, and executed a deed of trust on the property conveyed to them by McKinney to secure its payment at the rate of $159 a month. At the time of this transaction McKinney agreed with the Pierces that he would make the payments on this loan. He made the first three payments but made no more after the criminal charge was made against him. He also gave to the Pierces a second deed of trust on properties owned by him in Portsmouth, but the prior lien thereon was foreclosed and the Pierces received nothing from that source.

McKinney testified that he estimated the house he was to build for the Pierces would cost about $17,000, including the land, but that in fact it cost about $36,000 and took six months to build instead of the ninety days he figured; that at the time of building this house for the Pierces he was involved in building about thirty houses in Norfolk and Portsmouth and was in financial trouble; that he did not have the right kind of help, was unable to devote all his time to the Pierce job and "it just got out of hand." He told the Pierces before the house was completed that he was losing money and wanted to rescind the contract, but they declined to release him.

The Commonwealth's theory at the trial was that when McKinney received the money from the sale of the property conveyed to him by the Pierces, "that money was entrusted to him for the purpose of applying it to the new home and when he employed and used it or did anything else with it then he in fact embezzled and stole it." In its brief here the Commonwealth makes the additional argument that the defendant held the Forbes Road property in trust and

was without authority to encumber it, which also put him in violation of the embezzlement statute.

Section 18.1-109, defining embezzlement, provides in applicable part that if any person "wrongfully and fraudulently use, dispose of, conceal or embezzle any money, * * or any other personal property, * * which he shall have received for another * * or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another * * he shall be deemed guilty of larceny thereof, and may be indicted as for simple larceny. But proof of embezzlement under this section shall be sufficient to sustain the charge. * *"

This statute by its express terms applies only to the wrongful and fraudulent use of money or any other personal property. What was entrusted to defendant was real property, not personal property. This real property was conveyed to him by the Pierces by deed in compliance with their written contract that it should be "deeded" to him "before construction is started." There were no restraints or limitations in the contract on the use to be made of this real property by the defendant. Mrs. Pierce was asked what the defendant was to do with the Myrtle Avenue property conveyed by them to him by the deed, and she replied, "He was going to sell it." Asked what he was to do with the money that he received, she replied, "That was to be applied on our home on Forbes Road that he was to build for us." A real estate broker who was present when the contract was made was also asked what McKinney was to do with the purchase money when he sold the house, and she replied, "To build Mr. and Mrs. Pierce another home." That was no doubt their expectation, as well as the defendant's, but that was not in the contract and there is no evidence that the defendant made any promise to that effect.

Mr. Pierce was asked if it wasn't true that when the property was conveyed to McKinney no limitation was placed on him as to what he could do with it, and that he could sell it or do anything he wanted with it. He replied, "That's right. He said he was going to build us one in place of this one. I said all right and I signed the deed over to him like a nut."

There is, in fact, no evidence that McKinney used the money from the sale of the Pierce property for a purpose other than to build the Forbes Road house that he conveyed to them. He testified: "I am not guilty of no crime like this. I spent every nickel out of it out there in that house."

" * * It is a rule of general application that [penal] statutes are not to be extended by construction, but must be limited to cases clearly within the language used. * *
* *

"So, in the case of *United States* v. *Wiltberger*, 5 Wheat. 76, 95, 5 L.Ed. 37, Marshall, C. J., lays down the principle as follows: 'The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle, that the power of punishment is vested in the legislative, not in the judicial, department. It is the legislature, not the court, which is to define a crime, and ordain its punishment * *.' " *Jennings* v. *Commonwealth*, 109 Va. 821, 822-3, 63 S.E. 1080.

" * * A penal statute cannot be extended by implication, or be made to embrace cases which are not within its letter and spirit. Such statutes are always construed strictly against the State and in favor of the liberty of the citizen. * * " *Anderson* v. *Commonwealth*, 182 Va. 560, 566, 29 S.E.2d 838, 841; *Waller* v. *Commonwealth*, 192 Va. 83, 88, 63 S.E.2d 713, 716; *Wade* v. *Commonwealth*, 202 Va. 117, 122, 116 S.E.2d 99, 103.

The contract of January 7, 1963, provided that McKinney would convey the Forbes Road property to the Pierces by a general warranty deed "with the usual covenants of title;" and that "It is understood that the title is to be free and clear of all liens and indebtedness of every kind except the liens above mentioned." (None was mentioned in the contract.)

When McKinney conveyed the property to the Pierces it was encumbered by the deed of trust placed thereon by him to secure payment of the $20,000 loan. When he conveyed the property to the Pierces without clearing that lien from the title, he breached his contract with the Pierces that the title would be "free and clear of all liens." That was a culpable but not a criminal act. He broke his promise, but he did not break the law against embezzlement or larceny. However reprehensible his act, he did not thereby steal any money or other personal property belonging to the Pierces. The evidence in the case was not sufficient to support his conviction of a crime. This conclusion makes it unnecessary to discuss the remaining assignments of error.

The judgment of conviction is reversed and the indictment is dismissed.

*Reversed and dismissed.*