## CIRCUIT COURT OF FAIRFAX COUNTY

Jazayerli et al.

v.

Renaissance
Housing Corp. et al.

### Case No. (Law) 187583

BY JUDGE R. TERRENCE NEY

### March 12, 2001

This matter comes before the Court on Defendants' Demurrer and Plea in Bar.

This case involves the Exterior Insulation and Finishing System (hereinafter EIFS), a method of exterior finishing for a house, and the consequential effects of alleged defects in that finish and its installation. EIFS is a synthetic material which is designed to look like stucco. The Motion for Judgment consists of the following counts: Fraud, Constructive Fraud, Violation of the Virginia Consumer Protection Act, Negligence *Per Se*, and False Advertising. The False Advertising claim was added by an Amended Motion for Judgment after this demurrer and plea in bar were initiated. A separate demurrer and plea in bar have been filed in response to it.

The facts in this case vary significantly from the other EIFS cases filed in this Court. Here, Plaintiffs do not claim to have purchased their home from or have interacted directly in any manner with any of the named defendants or their representatives. Plaintiffs allege that Defendants constructed the house

and then sold it to an unidentified purchaser,[1] who subsequently sold it to Plaintiffs. The time of sale to plaintiffs was November 1999.

Three counts — Fraud, Constructive Fraud, and Violation of the Virginia Consumer Protection Act — all presuppose a transaction or at least some direct interaction between the Plaintiffs and the Defendants. No such interaction is alleged here. There is obviously no privity between Plaintiff and Defendants. Further, Plaintiffs admit that they had no direct interaction with Defendants but rather relied on the representations made to them by the original purchaser concerning EIFS. They also assert that they saw certain written materials prepared by the Defendants for the original purchaser, who gave them to the Plaintiffs. Reduced to its essence, the Plaintiffs urge the Court to find that whatever duties Defendants may have had to the original purchaser were conveyed to Plaintiffs with the house.

On demurrer all material facts alleged in the complaint, all facts impliedly alleged, and all reasonable inferences that can be drawn therefrom are considered true. *Riverview Farm Assocs. v. Board of Supervisors*, 259 Va. 419, 528 S.E.2d 99 (2000); *Fox v. Custis*, 236 Va. 69, 372 S.E.2d 373 (1988). Even accepting all of the Plaintiffs' allegations as true, however, none of them creates a legally cognizable duty under Virginia law or precedent. This Court is aware of no authority by which representations personal to a party as to a product transfer to a stranger with the sale of the product. The EIFS exterior was an option that new-home buyers could choose before construction. Allegations of misrepresentations amounting to fraud, constructive fraud, and violation of the Virginia Consumer Protection Act are all facially colorable as to the original purchasers because of their direct relationship with the developer. They lose their viability, however, as to strangers to the initial transaction when the allegedly misrepresented good is sold.

Additionally, the EIFS exterior finish was already in place on the house. At that point these buyers, the Jazayerlis, must take EIFS as a component of the existing structure. Failure on the part of them to properly evaluate the impact of potential defects or other undesirable attributes of the house cannot be attributed to the Defendants. The claims must be dismissed.

As to the remaining count, Negligence *Per Se*, this Court has previously ruled in *Moskowitz v. Renaissance at Windsong Creek, Inc.; Sanok v. Renaissance at Windsong Creek, Inc.*, 52 Va. Cir. 459 (2000), by the Honorable Robert W. Wooldridge, Jr., that EIFS plaintiffs may not as a matter of law maintain a claim of Negligence *Per Se* against these Defendants. The Court's reasoning in that matter is directly applicable here. The protection of

---

[1] The date of sale was April 17, 1996.

homeowners from economic loss is not the underlying purpose of the Uniform Statewide Building Code, rather it is the safety of the public. As a result, that statute may not serve as the basis for a Negligence *Per Se* claim when economic loss is the only injury asserted.

As a result, the demurrer is sustained in all respects.

## April 10, 2001

This matter came before the Court on March 30, 2001, on Defendants' Motion for Summary Judgment.

This case involves the Exterior Insulation and Finishing System, a synthetic stucco method of exterior cladding for single family residential properties, and the consequential effects of alleged defects in that cladding and its installation. For the reasons stated in court, the Motion for Summary Judgment was granted.

The Court then took under advisement whether further consideration of Exhibit C[2] to Plaintiffs' Memorandum of Law might change the Court's decision. Consideration of Exhibit C, the sales brochure, does not change the outcome of the ruling on Summary Judgment.

For purposes of Summary Judgment, the Court "must adopt those inferences from the facts that are most favorable to the non-moving party." *See Carson v. LeBlanc*, 245 Va. 135, 139, 427 S.E.2d 189, 192 (1993). Hence, the Court assumes for the purposes of this motion that the Plaintiffs were aware of the Renaissance sales brochure and relied on the brochure when they purchased the house — not from Renaissance — but from the original purchasers, Hasan and Nusrat Naghimi.

Virginia Code § 18.2-216 is a penal statute and must be construed strictly. *See Henry v. R. K. Chevrolet, Inc.*, 219 Va. 1011, 254 S.E.2d 66 (1979). The statute "cannot be extended by implication, or be made to embrace cases which are not within its letter and spirit." *McKinney v. Commonwealth*, 207 Va. 239, 243, 148 S.E.2d 829, 832 (1966). Here, the question presented is whether a false or misleading advertisement[3] relied upon by persons who then purchased the advertised product — *not from the entity which placed the false*

---

[2] Exhibit C is a Brochure published by Renaissance for prospective clients who may wish to buy a custom made home. The brochure features several styles and floor plans. The brochure contains depictions of exterior elevations of house models that are constructed with "stucco."

[3] The false or misleading nature of the advertisement is assumed for the purposes of the Opinion only.

*advertisement* — provides a cause of action in favor of those persons against the entity which placed the advertisement.

The operative language of the statute that applies here can be parsed as follows:

> Any . . . firm . . . with intent to sell . . . anything offered by such . . . firm . . . or to induce the public in any manner to enter into any obligation relating thereto . . . publishes . . . an advertisement . . . regarding anything so offered to the public . . . which . . . contains any . . . representation . . . which is untrue . . . shall be guilty . . . of a misdemeanor.

Virginia Code § 18.2-216 (1996 Repl. Vol.). Civil actions which may be based on a violation of this Section are provided for at §§ 59.1-68.3 and 59.1-68.5.

The intention of the statute is straightforward, to punish an offeror who promotes a sale of goods by the use of false advertising. It is not enough that the offeror simply publish the advertisement. There must be an "intention to sell" or an effort "to induce the public . . . to enter into any obligation" as to the product. The plain language of the statute contains a "sale" or "obligation" nexus.

In *Samuels v. King Motor Co. of Fort Lauderdale*, 2001 Fla. App. LEXIS 4036, 26 Fla. L. Weekly D 849, 2001 WL 313872 (Fla. App. 4 Dist. March 28, 2001), the Court of Appeals of Florida considered a claim brought pursuant to that state's misleading and false advertising statute.[4] There the plaintiffs alleged that an automobile dealer sold their trade-in vehicle before

---

[4] "(1) It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses. . . . (6) The phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services." Florida Statutes Section 817.41.

the purchase contract for their new vehicle had been finalized. The plaintiffs claimed that the "buyers order" used by the dealership was misleading and that they entered into it believing that their trade-in vehicle would not be disposed of until financing had been obtained for the new vehicle. The plaintiffs were disapproved for financing and told to make a larger down payment in order to qualify. They refused to do so and demanded the return of their trade-in vehicle. The dealer had already sold it, and the lawsuit followed.

In sustaining the trial court's dismissal of the false advertising claim, the Court of Appeals held that the misleading statement as to the fact that the trade-in vehicle would not be disposed of before the sale was concluded was not related to entering into a sales transaction.

> Here, the Plaintiffs did not allege that the misleading statement was made with the purpose of selling or disposing of any property. Rather, according to the implications inherent in the allegations, King Motor made the alleged misleading statement for the purpose of inducing the Plaintiffs to give possession of their trade-in vehicle to them. That King Motor might have intended to sell the trade-in vehicle to a third party is unavailing because the "selling" or "disposing" of property [mentioned in the Florida statute] must be related to the misleading statement made to the Plaintiffs.

2001 Fla. App. LEXIS 4036, 2001 WL 313872 at *4 (March 28, 2001). Interestingly, the trade-in aspect of the sales negotiation in *King Motor* is much closer to if not an integral part of the sale transaction itself than any connection that can be asserted here between the sales brochure and the Plaintiffs' purchase of the house from a third party. Notwithstanding, the Florida Court of Appeal — and the trial court — did not find that the misleading statement related to a "sale" or "obligation." On more difficult facts than those presented here, the Court reached the same result as here, and for the same reason.

Plaintiffs do not claim to have purchased their home from or to have interacted directly in any manner with any of the named Defendants or their representatives. Plaintiffs can, at most, allege that Defendants constructed the home at issue and on April 17, 1996, sold it to the original purchasers, who subsequently, in November 1999, sold it to Plaintiffs. Plaintiffs have no nexus involving a "sale" or other contractual "obligation" with any of the Renaissance Defendants. Their only connection with Defendants is that they saw a sales brochure for Defendants' new homes. This connection is too

remote. It does not involve a "sale" or "obligation" entered into or contemplated or sought to be entered into between the Plaintiffs and Defendants as required by the plain language of § 18.2-2.6.

The False Advertising Claim that remained in this case, for the reasons stated both in court on March 30, 2001, and herein, is inapplicable to these Defendants. The Motion for Summary Judgment is granted. No provision exists for permitting amendment of a Motion for Judgment upon the granting of Summary Judgment. This ruling is dispositive and final. This case is dismissed. The exception of counsel for the Plaintiffs to the Court's ruling is noted.