# CIRCUIT COURT OF FAIRFAX COUNTY

Linda Cash
and Richard Cash

v.

GWVA Corporation et al.

### Case No. (Law) 2007-4161

BY JUDGE R. TERRENCE NEY

October 4, 2007

This matter came before the Court on Defendant Penn Lyon Homes Corporation's Plea in Bar. After oral arguments on September 14, 2007, the Court took the matter under advisement.

*Facts*

In August 2004, Linda and Richard Cash requested information from Defendant Penn Lyon Homes Corporation ("Penn Lyon") regarding Penn Lyon's modular homes. In response, Penn Lyon provided the Cashes with literature containing numerous representations as to the quality of Penn Lyon's modular homes and as to the procedure for purchasing a Penn Lyon modular home. For example, the Cashes allege that the literature made claims such as that the house would be 95% completed when sent to the property; that it would be weather tight by the end of the day it was delivered; that the

builders' schedules were guaranteed; and that Penn Lyon conducts rigorous inspections throughout every phase of the construction process. See Complaint, p. 2.

Based on Penn Lyon's representations, the Cashes contacted Defendant GWVA Corporation ("GWVA"), a local builder which has constructed Penn Lyon's modular homes and which showed them several Penn Lyon homes in the area.

On October 13, 2004, the Cashes entered into a written agreement with GWVA, pursuant to which GWVA promised to construct a home on the Cashes' property in accordance with Penn Lyon specifications and to complete such home within 120 days of delivery of the modular units. The agreement provides that GWVA and Penn Lyon were to share in the contract responsibilities, the profits, and the losses.

The Cashes had numerous problems with the construction including delays in construction, improper placement of the modular boxes; improper foundation; leaking windows in the basement; improper window wells in the basement; improperly secured ductwork in the basement; improper exterior grading; sloppy and inadequate stonework; crooked walls, interior doors, and windows; improper installation of hardwood floors, incorrect location of the kitchen island, exterior doors, showers, cabinet doors, vinyl flooring, carpeting, and wiring; unsafe installation of gas lines, improper venting for plumbing; and a failure to make the house weather-tight within one day of delivery. See Complaint, pp. 4-5.

In April 2007, the Cashes filed a six-count complaint. Count IV of the complaint alleged misrepresentations concerning goods and services in violation of §§ 18.2-216 and 18.2-217 of the Virginia Code, and Counts V and VI alleged breaches of an implied warranty of fitness and of an implied warranty of merchantability pursuant to the Virginia Uniform Commercial Code. Defendant Penn Lyon filed a Plea in Bar as to these three counts.

*Analysis*

1. *False Advertising*

As a threshold issue, this Court finds that the Cashes have failed to allege that GWVA published any advertisement containing misrepresentations as to the Penn Lyon modular home it would construct. Therefore, this Court sustains GWVA's plea in bar with respect to Court IV of the Cashes' Complaint.

A different issue is presented as to whether the Cashes may bring a false advertisement claim under §§ 18.2-216 and 18.2-217 of the Virginia Code against Penn Lyon even though Penn Lyon never signed a written contract with the Cashes.

The operative language of § 18.2-216 may be parsed as follows: "Any . . . firm . . . with intent to sell . . . anything offered by such . . . firm . . . or to induce the public in any manner to enter into any obligation relating thereto . . . publishes . . . an advertisement . . . regarding anything so offered to the public . . . which . . . contains any . . . representation . . . which is untrue . . . shall be guilty . . . of a misdemeanor." *Jazayerli v. Renaissance Housing Corp.*, 55 Va. Cir. 49, 52 (2001).

As a penal statute, Virginia Code § 18.2-216 must be strictly construed. *Henry v. R. K. Chevrolet, Inc.*, 219 Va. 1011, 1014, 254 S.E.2d 66, 68 (1966). In construing this statute, this Court has held, "It is not enough that the offeror simply publish the advertisement. There must be an 'intention to sell' or an effort 'to induce the public . . . to enter into any obligation' as to the product. The plain language of the statute contains a 'sale' or 'obligation' nexus." *Jazayerli v. Renaissance Housing Corp.*, at 52 (2001).

Here, the Cashes allege facts sufficient to establish the requisite nexus. The Cashes allege that Penn Lyon intended to sell a modular home and engaged in an effort to induce the Cashes to enter into an obligation by providing them with literature describing the quality of Penn Lyon's modular homes and the process by which they could obtain such a home.

The process of acquiring a Penn Lyon modular home required the Cashes to contract with a local custom-home builder. Penn Lyon does not construct its modules after delivery to a property. As a result, the Cashes entered into a written contract with GWVA for a Penn Lyon home, which would be built by GWVA according to Penn Lyon's specifications.

By providing the Cashes with literature to induce them to purchase a Penn Lyon home, and by their efforts to guide them to contract with GWVA in order to obtain a Penn Lyon home, Penn Lyon created a nexus between Penn Lyon and the Cashes. The absence of Penn Lyon's signature on the contract the Cashes signed does not destroy this nexus. Therefore, the Cashes may bring a false advertising claim against Penn Lyon under §§ 18.2-216 and 18.2-217 of the Virginia Code.

## 2. Uniform Commercial Code

The second issue before the Court is whether the Cashes may bring a claim against Penn Lyon for an alleged breach of an implied warranty of fitness and of an implied warranty of merchantability pursuant to Virginia's Uniform Commercial Code ("UCC"), Va. Code Ann. §§ 8.2-314, 8.2-315.

Penn Lyon asserts that the Cashes claims under the UCC are barred for three reasons. First, Penn Lyon claims that modular homes are not "goods," and, therefore, the UCC does not govern the Cashes' claims. Second, Penn Lyon argues that a lack of privity between Penn Lyon and the Cashes bars their claims. Finally, Penn Lyon argues that it disclaimed all implied warranties in its contract with GWVA.

### a. Goods under the Uniform Commercial Code

As GWVA and Penn Lyon correctly contend, the UCC only applies to transactions in "goods." Va. Code Ann. § 8.2-102. The UCC defines "goods" as "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale. . . ." Va. Code Ann. § 8.2-105(1).

When a party acquires "real property improved with a new home," the new home is not a "good." *Glass v. Trafalgar House Property*, 58 Va. Cir. 437 (2002). But plainly the purchase of a modular home alone, with no real property involved, is not an acquisition of "real property improved with a new home." Instead, when a party contracts to purchase premanufactured housing units, or modular homes, the party is purchasing a good that is "moveable at the time of identification to the contract of sale." *See e.g., Ritz-Craft Corp. v. Stanford Mgt. Group*, 800 F. Supp. 1312, 1317 (D. Md. 1992) (holding that modular homes are goods because they were manufactured off-site in a factory and made to buyer's specifications, meaning the homes were movable at the time of the contracting); *Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 581, 441 N.E.2d 1027, 1031 (1982) (holding that the sale of modular homes constituted "transactions in goods" because the units were "movable at the time of identification to the contract for sale").

Although Virginia appellate courts and the United States Court of Appeals for the Fourth Circuit have not addressed whether modular homes are "goods" under the UCC, this Court finds the consensus of other courts as to that question persuasive. *See e.g., Cates v. Morgan Portable Bldg. Corp.*, 591 F.2d 17, 20 (7th Cir. 1979) (holding that two prefabricated modular units, each consisting of five motel units, were goods under the UCC); *Vigano v.*

*Wylain, Inc.*, 633 F.2d 522, 525, n. 3 (8th Cir. 1980) (noting that modular homes seem clearly to fit the definition of goods under the UCC); *Clark v. Jim Waters Homes, Inc.*, 719 F. Supp. 1037, 1044 (11th Cir. 1989) (recognizing that modular homes come within the broad category of goods covered by Article 2 of the UCC, though modular homes are not consumer products for purposes of Article 9); *Ritz-Craft Corp. v. Stanford Mgt. Group*, 800 F. Supp. 1312, 1317 (D. Md. 1992) (holding that modular homes are goods because they were manufactured off-site in a factory and made to buyer's specifications, meaning the homes were movable at the time of the contracting); *Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 581, 441 N.E.2d 1027, 1031 (1982) (holding that the sale of modular homes constituted "transactions in goods" because the units were "movable at the time of identification to the contract for sale").

In *Ritz-Craft Corp. v. Stanford Management Group*, two parties entered into a written contract to manufacture and install prefabricated multi-family housing units. 800 F. Supp. 1312, 1314 (D. Md. 1992). The contract required the manufacturer to arrange for the housing units to be delivered and set on a foundation laid by the builder. The builder would then provide electrical hook-up, plumbing hook-ups, heating, ventilation, air conditioning systems, and other appliances. The federal district court in Maryland determined that this contract requiring the manufacturer to supply premanufactured housing units to the builder was a contract for the sale of goods under Maryland's UCC. *Id.* at 1317. Maryland's UCC, identical to Virginia's UCC, defines goods as "all things (including specially manufactured goods) which are moveable at the time of identification." The court held that, because the modular units installed were manufactured off-site at the manufacturer's factory to the buyer's specifications, the time of identification to the contract was the first step in production, at which time the modular homes were moveable. *Id.*

Similarly, in *Burnham v. Mark IV Homes*, nine plaintiffs purchased nine modular homes, which were manufactured by the defendant in a factory in Pennsylvania and installed on nine lots in Massachusetts. 387 Mass. 575, 576, 441 N.E.2d 1027 (1982). When the homes began to leak at various times during installation, the plaintiffs brought an action against the manufacturer alleging, among other things, breach of implied warranties under the UCC. *Id.* at 580-81, 441 N.E.2d 1027, 1031. The Massachusetts Supreme Court held that the manufacturer was liable to the plaintiffs under the UCC because the sale of the modular homes to the plaintiffs constituted "transactions in goods" under the Massachusetts' UCC because those units were "moveable at the time of identification to the contract for sale" and hence were "goods." *Id.*

Here, the Cashes purchased a modular home that Penn Lyon would manufacture in a factory in Pennsylvania and move to the Cashes' lot for installation. After delivery, the units would be erected and made ready for final electrical, plumbing, and heating hook-ups. As in *Ritz-Craft Corp.* and in *Burnham*, this modular home was moveable at the time of its identification in the contract of sale. Whatever relationship the modular home had to real property prior to its delivery and installation was inchoate at best. For this reason, the Court finds this particular modular home to be a "good" under Virginia's UCC.

### b. *Privity of Contract*

Penn Lyon next argues that, even if the modular home is a good, a lack of privity bars the Cashes' claims under the UCC. Although the Cashes admit that Penn Lyon never signed a written contract with them, they argue that Penn Lyon is liable under the UCC antiprivity statute and as, in effect, a *de facto* if not a *de jure* partner of GWVA, with whom the Cashes did sign a written contract.

Virginia's antiprivity statute provides:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods. . . .

Va. Code Ann. § 8.2-318 (2007).

In *Stoney v. Franklin*, a trial court interpreted Virginia's antiprivity statute as permitting homeowners to sue the manufacturer of defective building materials which a contractor used to build their home on an implied warranty theory even though the homeowners never contracted with the manufacturer. *Stoney v. Franklin*, 54 Va. Cir. 591 (2001). The court reasoned, "The presence or absence of a sale of goods *directly involving the plaintiff* plays no role in the analysis. . . . The sole inquiry should be whether the plaintiff fits within the class of persons 'whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods'." *Id.* at 602 (emphasis in original); *but see Winchester Homes, Inc. v. Hoover Universal, Inc.*, 30 Va. Cir. 22, 30 (1992) (holding that to permit the

antiprivity statute to operate in this context would be "against public policy" and would lead to "extraordinary" results unintended by the antiprivity statute). The court concluded that the plaintiffs, as homeowners, easily fit within that class of persons. *Id.*

Here, it is plain that Penn Lyon "might reasonably have expected [the Cashes] to use, consume, or be affected by the goods." Indeed, Penn Lyon provided the Cashes with literature that contained numerous representations as to the quality of Penn Lyon's modular homes and outlined for them the process of obtaining a Penn Lyon modular home. The Cashes entered into a contract with GWVA in order to obtain a Penn Lyon modular home. Their contract with GWVA stated that Penn Lyon was to share with GWVA in the responsibilities, profits, and losses under GWVA's contract with the Cashes. As in *Stoney v. Franklin*, if not even more so given Penn Lyon's *direct* involvement with the Cashes, the Cashes easily fit within that class of persons to whom Virginia's antiprivity statute extends implied warranties. They would absolutely be "reasonably expected" to use Penn Lyon's "goods."

### c. *Disclaimer of Warranty*

Finally, Penn Lyon contends that it disclaimed all implied warranties in its contract with GWVA. In support of this claim, Penn Lyon submitted to the Court a *blank unsigned* "Limited Warranty" form. Although a manufacturer may disclaim implied warranties, Va. Code Ann. § 8.2-316(2), a totally blank and unsigned form showing no connection whatsoever to the Cashes is totally insufficient to show that Penn Lyon did in fact disclaim all implied warranties that accompanied the sale of the modular home.

### Conclusion

For these reasons, Defendant GWVA's Plea in Bar is sustained as to Count IV and overruled as to Counts V and VI, and Defendant Penn Lyon's Plea in Bar is overruled as to Counts IV, V, and VI.

November 9, 2007

This matter came before the Court on Defendant GWVA Corporation and Defendant Penn Lyon Homes Corporation's Demurrers. After oral arguments on October 17, 2007, the Court overruled Penn Lyon Homes

Corporation's demurrer to Count I[1] and sustained, with leave to amend, the Defendants' demurrers to Count III. Count III of the Complaint alleged that the Defendants violated the Virginia Consumer Protection Act. Because the Cashes failed to plead this allegation with particularity, the Court sustained the Defendants' demurrers and granted the Cashes leave to amend Count III of their Complaint. With regard to the Defendants' demurrers to Count II, the Court took the matter under advisement.

## Facts

The facts of this case are set out in this Court's opinion letter of October 4, 2007. At that time, the Court ruled on the pleas in bar of Defendant GWVA Corporation and Defendant Penn Lyon Homes Corporation. The Court held that Linda and Richard Cash could bring a claim against the Defendants under the Virginia Uniform Commercial Code because modular housing units are "goods" as defined by Virginia's UCC.

Now the issue is whether the alleged defects in this modular housing unit, once GWVA assembled the unit into a dwelling on the Cashes' property, also provide the Cashes with a claim under § 55-70.1 of the Virginia Code.

## Analysis

Title 55 of the Virginia Code addresses "property and conveyances." Section 55-70.1 provides:

> In every contract for the sale of a new dwelling, the vendor shall be held to warrant to the vendee that, at the time of the transfer of record title or the vendee's taking possession, whichever occurs first, the dwelling with all its fixtures is, to the best of the actual knowledge of the vendor or his agents, sufficiently (i) free from structural defects, so as to pass without objection in the trade, and (ii) constructed in a workman like manner, so as to pass without objection in the trade.

---

[1] Penn Lyon demurred to Count I, which alleged a breach of contract, arguing that it was not a joint venturer with GWVA, and therefore not contractually liable. The Court overruled the Demurrer because the Cashes sufficiently pleaded that Penn Lyon and GWVA acted as joint venturers.

Va. Code Ann. § 55-70.1(A).

This Section, beginning with its title, makes plain that it applies to conveyances of real property. The Section's references to a "transfer of record title" indicate that the General Assembly had real property in mind when it drafted this legislation. After all, transfers of record title only occur by deed. A deed is necessary to transfer real property. Therefore, in order for this Section to provide a vendee with a warranty, the vendee must have contracted for the sale of a new dwelling, meaning the vendee must have contracted for the sale of a dwelling situated upon and attached to real estate. The Section anticipates that a "transfer of record title," which must occur by deed, will also occur.

Here, the Cashes contracted with GWVA to have a Penn Lyon modular home constructed in a factory in Pennsylvania and shipped to real property owned by them for assembly by GWVA. Because the modular home was movable at the time of its identification in the contract, this Court held that the modular housing units constituted a good under the UCC and not real estate.

The Cashes cannot now maintain an allegation that their contract for the sale of the modular housing unit, a contract for the sale of goods, was also a contract for the sale of a new dwelling, a contract for the sale of real estate. There being no contract for the sale of a new dwelling and certainly no expectation of a later "transfer of record title," § 55-70.1 does not apply. The Cashes are afforded no warranties pursuant to that Section.

Moreover, even if § 55-70.1 did apply to the Cashes' purchase of the Penn Lyon modular housing units once GWVA assembled and attached the units to the Cashes' property, the Cashes failed to comply with § 55-70.1(D).

Section 55-70.1(D) provides vendees with a cause of action against a vendor for damages to a new dwelling; "*provided*, however, for any defect discovered after July 1, 2002, such vendee shall first provide the vendor, by registered or certified mail at his last known address, a written notice stating the nature of the warranty claim." Va. Code Ann. 55-70.1(D) (2007) (emphasis added). Additionally, § 55-70.1(D) allows the vendor a reasonable period of time, not to exceed six months, to cure the defect that is the subject of the warranty claim. *Id.* The General Assembly added this provision to § 55-70.1(D) as an amendment in 2002.

Prior to the 2002 amendments, the Supreme Court of Virginia held that the language of § 55-70.1 plainly did not require the purchaser of a new dwelling to give notice of a defect in construction to the builder within the one-year statutory warranty period as a prerequisite for bringing a breach of warranty action under this statute. *Vaughn, Inc. v. Beck*, 262 Va. 673, 678, 554 S.E.2d 88, 90 (2001). The Court concluded that a "breach by a builder, not a tendering of notice, [was] the only condition that the statute impose[d]

for bringing an action against the builder within two years of the date of the breach." *Id.* at 678, 554 S.E.2d at 91. The Court refused to add new language to the statute or to hold "that the General Assembly meant to add a requirement to the statute that it did not actually express." *Id.* at 678-79, 554 S.E.2d at 91.

After the Virginia Supreme Court's decision in *Vaughn, Inc. v. Beck*, the General Assembly amended the statute to add, as a condition for bringing suit, that the vendee shall first provide the vendor with written notice stating the nature of the warranty claim. The Cashes never alleged that they provided written notice of the warranty claim to GWVA or to Penn Lyon and that GWVA and Penn Lyon failed to cure the defects within a reasonable period of time. Therefore, even if this Section provided the Cashes with its warranties, the Cashes failed to comply with the statutory prerequisites for bringing a claim under this Section.

## Conclusion

For these reasons, Defendant GWVA and Defendant Penn Lyon's Demurrers to Count II are sustained with prejudice.

## Order

This matter came before the Court on October 17, 2007, on Defendants GWVA Corporation and Penn Lyon Homes Corporation's Demurrers. For the reasons stated in Court on October 17, 2007, and in this Court's Opinion Letter dated November 9, 2007, which is attached hereto and made a part hereof, it is ordered that Penn Lyon's Demurrer is overruled as to Count I, sustained with prejudice as to Count II, and sustained with leave to amend as to Count III, and it is ordered that GWVA Corporation's Demurrer is sustained with prejudice as to Count II, and sustained with leave to amend as to Count III.