# CIRCUIT COURT OF ROANOKE COUNTY

Craig Frye

    v.

B & B Contracting, Inc.,
d/b/a Brant Custom Homes,
and Kingsland Development, Inc.

October 31, 2012

Case No. CL12-77

By Judge Robert P. Doherty, Jr.

Plaintiff Purchaser signed a contract to buy a vacant lot from Defendant Seller, Kingsland Development, Inc. He also contracted with Defendant Builder, B & B Contracting, Inc., to construct a house on that lot. Builder completed the house before December 6, 2005. The land transferred from Seller to Purchaser by deed dated December 7, 2005. Builder did not perform or supervise any construction on the house after December 6, 2005. Within several months of the land transfer, Purchaser noticed cracks in the foundation and walls of his new home and notified Builder.

Purchaser and Builder met and discussed fixing the problem. Their discussions continued for several years until August 2009, when an expert employed by a company called Circeo Geotech, examined the premises, conducted tests, and determined that the fill material on which the house had been built was unstable. The expert told the parties that major work had to be undertaken to prevent further damage to the house. Plaintiff alleges that Defendants then hired Sampson Construction Co., Inc., and paid them $20,000.00 to stabilize the house foundation. That stabilization effort failed. On March 14, 2011, a different expert, Comprehensive Construction Services, Inc., examined the residence and advised the parties that no

amount of remediation could correct the damage to the structure and it needed to be torn down.

On January 19, 2012, Purchaser filed suit against Seller and Builder, alleging that both Seller and Builder were joint sellers, that they breached the implied statutory warranty for a foundation contained in § 55-70.1, Code of Virginia (1950), as amended, that they jointly breached the contract for construction of the residence, that Builder negligently inspected and supervised the construction, and that Builder caused property damage by using defective building components or materials. Both Seller and Builder independently demurred to the breach of implied warranty claim arguing that Purchaser did not file the necessary statutory notice required pursuant to § 55-70.1(D) to be able to proceed on a claim of breach of implied statutory warranty. Both Defendants filed Pleas of the Statute of Limitations. Seller filed a Special Plea in Bar arguing that a statute of repose applied and had lapsed and that Purchaser no longer had a cause of action. Finally, Builder filed a Special Plea in Bar arguing that it was not a statutory vendor and, consequently, the statutory implied warranty claim must fail.

Plaintiff responded to Defendants' motions contending that the statutes of limitations and the statutory time periods were all tolled by Defendants' actions. He argues that an application of the doctrine of equitable estoppel under the facts of this case clearly prevents the Seller and Builder from raising their defenses. As to the claim of a violation of a statute of repose, Purchaser argues that his is a contract case, and not a tort, and thus a statute of repose cannot apply. Both Defendants challenge Plaintiff's claim of equitable estoppel.

## Equitable Estoppel

The doctrine of equitable estoppel is designed to prevent a wrongdoer from fraudulently hiding his wrong from an innocent party, thereby gaining unfair advantage as a result of his misrepresentations. It prevents the wrongdoer from challenging facts that would have been true but for the fraudulent misrepresentations. As referenced by both parties, the elements of equitable estoppel as set out in *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 86 (1980), are: (1) a material fact was falsely represented or concealed and (2) the representation or concealment was made with knowledge of the facts and (3) the party to whom the representation was made was ignorant of the truth of the matter and (4) the representation was made with the intention that the other party should act upon it and (5) the other party was induced to act upon it and (6) the party claiming estoppel was misled to his injury.

The fraud required for equitable estoppel involves moral turpitude. That means that the wrongdoer must have actually lied, hid the truth, or tried to mislead the innocent party with the intent to conceal from him the discovery

of the cause of action for the wrong done. All of the elements of equitable estoppel must be present for it to be applied. "When the facts giving rise to the cause of action are known to both parties, there can be no estoppel." *Boykins* at 87. See also, *Housing Auth. v. Laburnum Corp.*, 195 Va. 827 (1954); *Lindsay v. James*, 188 Va. 646 (1949).

The facts relied upon by Plaintiff to establish equitable estoppel are that, immediately after discovering cracks in the walls and foundation of his house, all within several months of purchasing the real estate on December 7, 2005, he contacted Builder. He was told by Builder "not to worry" about the warranty and that Builder would make the situation "right." Nothing happened thereafter until August 2009 when the first expert hired by Defendants examined the premises and told Plaintiff and Defendants that the fill dirt under the house was unstable and could only be corrected by drilling shafts under the house and filling them with cement. This was done but failed to fix the problem. All of this occurred within the five-year statute of limitations and within the five-year statutory warranty term.

This set of facts does not rise to the level of the detrimental reliance contemplated by the doctrine of equitable estoppel. No material fact was falsely represented to Plaintiff. No statements were made or actions taken to conceal the cause of action from him. He was aware of the truth of the matter and the existence of his cause of action, at the very least, when the expert told him in September 2009 that the fill dirt under the house was not stable and the remedial measures had to be taken. He also learned on or about March 14, 2011, from the second expert, that the remedial measures had failed and the house needed to be destroyed. The actions taken by Defendants in hiring an expert to determine the problem and paying another contractor $20,000.00 to remedy the situation are inconsistent with fraudulent intent and instead consistent with a "contractor trying to satisfy a customer and fulfill its contract." See *Boykins, supra,* at 84. The Defendants were trying to fulfill the original statement of Builder to correct the problem and make it "right." Plaintiff was not misled. Nothing was hidden from him. The doctrine of equitable estoppel does not apply under the facts of this case.

### Statutory Warranty

The statutory warranty claimed by Plaintiff is based on § 55-70.1, Code of Virginia (1950), as amended. Before this statutory warranty can come into being, a vendor who is in the business of building and selling or just selling a new dwelling must actually sell such new building to a purchaser. Upon the sale, the dwelling together with all of its fixtures comes under a statutory warranty whereby the vendor warrants that the building is free from structural defects so as to pass without objection in the trade, that it is constructed in a workman like manner, so as to pass without objection

in the trade, and that it is fit for habitation. The vendee or purchaser shall have a cause of action for damages against the vendor for any breach of this warranty. The statute provides for a one-year warranty for the whole structure and five years on the foundation.

To assert a claim under this warranty, the purchaser must provide to vendor by receipted hand delivery or by registered or certified mail at his last known address, a written notice stating the nature of the warranty claim. Section 55-70.1 was amended in 2002 to make it compulsory that written notice to the vendor of the nature of the warranty claim be sent by registered or certified mail to the vendor's last known address or, in the alternative, that it be hand delivered to the vendor or his agent as proven by a written receipt of delivery. See *Cash v. GWVA Corp.*, 74 Va. Cir. 243 (2007). Upon receipt of that notice, the vendor has six months to cure the defect. The failure of the vendor to cure the defect gives rise to the vendee's right to sue for a breach of this warranty. The one-year warranty on the whole house and the five-year warranty on the foundation commences upon the vendee's taking possession of the house or the transfer of record title, whichever first occurs. Any action for the breach of warranty must be brought within two years of the breach.

In this case, no allegation has been made by Plaintiff purchaser that he sent the required statutory notice. In fact, the Defendants made affirmative representations that statutory notice had not been received by either of them. More than six and a half years lapsed from the purchase of the house until suit was filed. The Plaintiff's pleading alleges that he noticed the cracks in the walls and foundation "within several months" of his purchase of the house on December 6 or 7, 2005. Suit was not filed within two years of the breach alleged. Accordingly, the statutory warranty claims fail.

Defendants argue in the alternative that the claims should fail because neither Defendant fits the definition of a vendor. They point out that no allegation has been made of a joint venture, that Defendant builder never sold anything to Plaintiff, and that Defendant seller contracted to sell a vacant lot to Plaintiff, who in turn contracted with builder to construct a house on it. All parties cited numerous cases defining the term vendor and went into great detail in their arguments. Whether Plaintiff could have successfully proven that one or both of the Defendants were vendors is a moot point as the Court has already ruled that no statutory notice was given.

*Statute of Limitations*

Plaintiff's claim of breach of a written contract is subject to the statute of limitations provisions of § 8.01-246(2), Code of Virginia (1950), as amended. A five-year statute of limitations applies. *Dixon v. Hassell & Folkes, P.C.*, 283 Va. 456 (2012). It commences upon the breach of the contract and not when the damage is discovered. Plaintiff took possession

of the house when the real estate was transferred to him on December 7, 2005. Within several months of the transfer, Plaintiff's pleading alleges that he noticed cracks in the foundation and he began talks with the builder. Admittedly, any breach of contract occurred with the building of the foundation, and not the completion of the house; however, if we use the later time alleged in Plaintiff's pleadings of the discovery of the injury, more than five years elapsed before he filed his action on January 19, 2012. The statute of limitations is an absolute bar to Plaintiff's breach of contract claim.

## Negligent Completion of the Contract

Part of Plaintiff's argument centers around his claim that Defendant Builder was negligent in purchasing materials, in carrying out the construction, and in the supervision and/or inspection of the construction of the house. To avoid turning every breach of contract into a tort, the Supreme Court of Virginia "enunciated the rule that, in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Augusta Mutual Ins. Co. v. Mason*, 274 Va. 199, 205 (2007). In this particular case, no duty that was separate and independent from the contract was breached or violated. Accordingly, the negligence claim is of no force or effect. There are no tort claims that did not arise from duties assumed under the contract. As such, the statute of repose does not apply.

Plaintiff's action will be dismissed for all of the reasons stated herein. Any remaining issues raised by any of the parties are moot.