COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Chief Judge Decker, Judge Chaney and Senior Judge Humphreys
Argued at Richmond, Virginia


SAMUEL HARRIS, S/K/A
  SAMUEL HARRIS, JR.

                                                              OPINION BY
v.        Record No. 0119-24-2                    JUDGE VERNIDA R. CHANEY
                                                         FEBRUARY 18, 2025

COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                           M. Duncan Minton, Jr., Judge

         Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
         Defense Commission, on briefs), for appellant.

         Allison M. Mentch, Assistant Attorney General (Jason. S. Miyares,
         Attorney General, on brief), for appellee.


        In this case of first impression, we address the question of whether Code § 18.2-387.1

permits multiple convictions for a single "actual or explicitly simulated act[] of masturbation."  A

jury convicted Samuel Harris of two counts of obscene sexual display in violation of Code

§ 18.2-387.1.  On appeal, Harris argues that the evidence was insufficient to establish two

violations of the statute and the trial court erred by issuing Jury Instruction 5 on a particular

permissible inference.  For the following reasons, we conclude that prosecution under Code

§ 18.2-387.1 requires proof of multiple acts to support multiple convictions—and there is only

proof of one such act in this record.  However, the trial court did not err by issuing Jury

Instruction 5.  Therefore, this Court affirms in part and reverses in part the trial court's judgment

and remands with instructions to vacate one conviction under Code § 18.2-387.1.

BACKGROUND[1]

I. The Incident

On August 6, 2022, two women were in Rockwood Park at pavilion three setting up for a gender reveal party. As the women were walking from the parking lot to pavilion three, they observed a man, Samuel Harris, huddled on the gravel trail. Harris was naked, wearing a blonde wig, with khaki pants and fishnet stockings around his ankles. As they hurried past Harris, he turned to face them and was stroking his erect penis "vigorously." Harris made eye contact with each woman as they ran back to their vehicle.

When the women got into their vehicle, one of them called 911. Sergeant Warren Ball with the Chesterfield County Police Department met the women in the parking lot, and as he was interviewing them, Harris emerged from the woods. They identified Harris as the man they had seen on the trail earlier. When Sergeant Ball went to speak with Harris, Harris explained that he was changing his clothes on the trail because the bathroom was occupied. Harris stated that he was putting on the fishnet undergarments because he liked to wear women's clothing under his work uniform. Sergeant Ball recovered the blonde wig which was held in a yellow bag from inside of Harris's pants. Sergeant Ball obtained a warrant for Harris's arrest based on a misdemeanor committed outside of his presence, and officers later arrested Harris at Walmart, where he worked. Harris was charged with two counts of obscene sexual display.

II. Pre-Trial Double Jeopardy Motion

On September 25, 2023, Harris filed a pre-trial motion to dismiss duplicative charges as a violation of double jeopardy. He argued that "[t]he women were together when they saw the

---

[1] "This Court reviews the facts in the light most favorable to the Commonwealth, the prevailing party" below. *Commonwealth v. Carter*, 79 Va. App. 329, 334 (2023). "We 'regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence.'" *Id.* (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020)).

alleged incident, and there is no allegation of a second, distinct act of actual or simulated masturbation." He further argued that "[s]imply because the alleged incident was viewed by multiple people, does not mean that a defendant can be criminally charged for each person who may have borne witness."

At the hearing on the motion, Harris argued that Code § 18.2-387.1 "covers an action and it is not victim specific." Harris elaborated that it was unnecessary that anybody see the simulated conduct, rather it is the actual act of simulated masturbation. Harris stated that "it was plainly written in the statute that . . . one, multiple, or even no people can see the act and it would still be a single misdemeanor violation." The Commonwealth countered that the language in the statute simply defined a "public place." The trial court concluded that the language was not meant to exclude multiple convictions when numerous people viewed the act and accordingly denied Harris's motion.

### III. Jury Trial

A jury trial was held on September 28, 2023. During the Commonwealth's case-in-chief, the two women and Sergeant Ball testified about the events occurring on August 6, 2022. The Commonwealth introduced Sergeant Ball's body camera footage into evidence. At the close of the Commonwealth's case-in-chief, Harris made a motion to strike, arguing the Commonwealth failed to show that he engaged in two acts of masturbation in support of the two charges. The trial court denied Harris's motion, noting that it had previously ruled on this argument. Harris did not put on any evidence and renewed his motion to strike. The trial court denied the motion again.

After the close of evidence, the Commonwealth provided Jury Instruction 5 to the trial court, which stated, "[i]t is permissible to infer that every person intends the natural and probable consequence of his or her acts." Harris objected to the instruction on the ground that it was

- 3 -

irrelevant. The Commonwealth countered that the instruction was relevant because it permitted the jury to infer that Harris intended to be seen by others when he masturbated in a public park. The court overruled the objection and noted that the instruction was very common. The jury found Harris guilty of both charges, and the trial court sentenced him to 24 months of incarceration with 22 months suspended.

ANALYSIS

On appeal, Harris first argues that the trial court erred by denying his motion to strike one of the two obscene sexual display charges under Code § 18.2-387.1, where the evidence was insufficient to establish more than one act of actual or explicitly simulated acts of masturbation.[2] Harris also argues that the trial court erred in instructing the jury that it was permissible to infer that every person intends the natural and probable consequences of his or her actions. For the reasons discussed below, we find that the trial court erred in convicting Harris of two counts of obscene sexual display where the unit of prosecution is for each actual or explicitly simulated act of masturbation, and the evidence was insufficient to establish he committed two acts of masturbation. Further, we find that the trial court did not err in issuing Jury Instruction 5.

---

[2] Alternatively, Harris argues that the trial court erred in denying his double jeopardy motions made pursuant to the Fifth Amendment of the U.S. Constitution and Article I, § 8 of the Virginia Constitution, seeking dismissal of one of the two obscene sexual display charges. We decline to reach the question under the double jeopardy clause and resolve this case on the narrower ground that Code § 18.2-387.1 requires proving separate acts of masturbation to convict an individual. "It is a 'fundamental and longstanding precept that . . . "unnecessary adjudication of a constitutional issue" should be avoided.'" *Grady v. Blackwell*, 81 Va. App. 58, 67 (2024) (alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). "[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter." *Id.* (alteration in original) (quoting *Taylor v. Commonwealth*, 78 Va. App. 147, 157 (2023)). "The constitutional-avoidance doctrine is 'an aspect of the "doctrine of judicial restraint" that "dictates that we decide cases 'on the best and narrowest grounds.'"'" *Id.* (quoting *McKeithen v. City of Richmond*, 302 Va. 422, 435 n.2 (2023)).

I.  The trial court erred in denying Harris's motion to strike where the evidence did not prove two separate acts.

Harris argues on appeal that the evidence is insufficient to sustain his convictions because the trial court erred "in denying the motion to strike one of the two obscene sexual display charges under Code § 18.2-387.1 where the evidence was insufficient to establish more than one act of actual or explicitly simulated acts of masturbation." Harris contends that the unit of prosecution must be determined by the statutory language establishing the gravamen of the offense, and under Code § 18.2-387.1, the unit of prosecution is the number of occurrences of actual or explicitly simulated acts of masturbation. We agree.

"Under well-established principles, an issue of statutory interpretation is a pure question of law which [this Court] review[s] de novo." *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "When the language of a statute is unambiguous, [this Court is] bound by its plain meaning." *Id.* (quoting *Conyers*, 273 Va. at 104). "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Id.* (alterations in original) (quoting *Baker v. Commonwealth*, 284 Va. 572, 576 (2012)). "'It is a cardinal principle of law that penal statutes are to be construed strictly against the Commonwealth' and 'cannot be extended by implication[] or be made to include cases which are not within the letter and spirit of the statute.'" *Barnes v. Commonwealth*, 61 Va. App. 495, 498 (2013) (quoting *Wade v. Commonwealth*, 202 Va. 117, 122 (1960)). "However, '[this Court] will not apply "an unreasonably restrictive interpretation of the statute" that would subvert the legislative intent therein.'" *Id.* (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 581 (2002)).

At its core, Harris's argument is that the unit of prosecution of Code § 18.2-387.1 is based on each actual or explicitly simulated occurrence of masturbation. While we need not address Harris's argument under the Double Jeopardy Clause of the Fifth Amendment, we note that

"many of our prior cases analyzing the 'unit of prosecution' set out in a statute do so against the backdrop of a double jeopardy challenge." *Taylor v. Commonwealth*, 77 Va. App. 149, 162 (2023). Both the United States and Virginia constitutions protect a defendant from being "put twice in jeopardy for the same offense." U.S. Const. amend. V; Va. Const. art. I, § 8. "[T]his protection is 'limited to assuring that the court does not exceed its *legislative* authorization." *Taylor*, 77 Va. App. at 162 (quoting *Stephens v. Commonwealth*, 263 Va. 58, 62 (2002)). As such, "any double jeopardy challenge necessarily folds back into interpreting the legislature's intent in enacting a criminal offense—the same inquiry we take up here." *Id.* at 163.

To determine whether the evidence was sufficient to convict Harris of two counts of obscene sexual display, this Court must determine the correct unit of prosecution under Code § 18.2-387.1. "When considering multiple punishments for a single transaction, the controlling factor is legislative intent." *Groffel v. Commonwealth*, 70 Va. App. 681, 687 (2019) (quoting *Commonwealth v. Gregg*, 295 Va. 293, 298 (2018)), *aff'd*, 299 Va. 271 (2020). "In determining legislative intent, the court first looks to the plain language of the statute." *Id.* "If the language is clear and unambiguous, [an appellate court] will assign the statute its plain meaning." *Id.* (alteration in original) (quoting *Browning-Ferris Indus. of S. Atl. v. Residents Involved in Saving the Env't, Inc.*, 254 Va. 278, 284 (1997)). Further, appellate courts must "give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." *Id.* (quoting *Conyers*, 273 Va. at 104). By contrast, "if the statutory language is ambiguous, the court must rely on 'the gravamen of the offense to determine the legislature's intent regarding the permissible unit of prosecution." *Id.* (quoting *Baker*, 284 Va. at 576).

"To the extent there is ambiguity, such 'ambiguity should be resolved in favor of lenity,' because if the legislature 'does not fix the punishment for a[n] . . . offense clearly and without

- 6 -

ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.'" *Taylor*, 77 Va. App. at 162 (alterations in original) (quoting *Bell v. United States*, 349 U.S. 81, 83-84 (1955)). In *Taylor*, this Court analyzed whether firing three rapid shots at the same person in the same instance are sufficient to sustain three convictions for maliciously shooting within an occupied building. *Id.* Code § 18.2-279 provides,

> If any person maliciously *discharges* a firearm within any building when occupied by one or more persons in such a manner as to endanger the life or lives of such person or persons, or maliciously shoots at, or maliciously throws any missile at or against any dwelling house or other building when occupied by one or more persons, whereby the life or lives of any such person or persons may be put in peril, the person so offending is guilty of a Class 4 felony.

(Emphasis added). This Court held that "the legislature intended [the statute] to be bullet specific." *Taylor*, 77 Va. App. at 162 (finding that the gravamen of the offense is the risk of endangerment or death to another as a result of discharging a firearm); *Miles v. Commonwealth*, 78 Va. App. 73, 89-90 (2023) (finding that the term discharge refers to an individual bullet); *see also Stephens v. Commonwealth*, 35 Va. App. 141, 147 (2001) (finding that the gravamen of the offenses for Code §§ 18.2-154 and 18.2-286.1 is the risk of endangerment or death to another as a result of conduct by the accused). In determining that the legislature intended the statute to be bullet-specific, this Court relied on (1) the Supreme Court of Virginia's analysis of the similar malicious shooting at an occupied vehicle statute, (2) the independent risk carried by each bullet, and (3) the statute's unambiguous use of the word "discharge." *Taylor*, 77 Va. App. at 162. This Court drew no meaningful distinction between someone who "maliciously shoots" and someone who "maliciously discharges a firearm" where the facts show that the trigger of the firearm was pulled multiple times. *Id.* at 163 (noting that statutes should be construed with a view toward harmonizing it with other statutes). Further, the gravamen of the offense is "the risk of endangerment or death to another as a result of discharging a firearm." *Id.* at 163-64 ("The

- 7 -

life of another is endangered with the discharge of each shot, even if multiple shots are discharged in rapid succession.").  Finally, this Court noted that the statute criminalized the "discharge" of a firearm, and *Black's Law Dictionary* defined it as "[t]he expulsion of a *bullet* from a firearm; esp. the shooting of a gun."  *Id.* at 164 (alteration in original).

It is axiomatic that "[t]he legislature 'may determine the appropriate "unit of prosecution" and set the penalty for separate violations.'"  *Johnson v. Commonwealth*, 292 Va. 738, 741 (2016) (quoting *Jordan v. Commonwealth*, 2 Va. App. 590, 594 (1986)).  "[A]lthough multiple offenses may be the 'same,' an accused may be subjected to legislatively 'authorized cumulative punishments.'"  *Id.* (quoting *Jordan*, 2 Va. App. at 594).  "It is well settled that two or more distinct and separate offenses may grow out of a single incident or occurrence, warranting the prosecution and punishment of an offender for each."  *Sandoval v. Commonwealth*, 64 Va. App. 398, 413 (2015) (quoting *Jones v. Commonwealth*, 208 Va. 370, 375 (1967)).

Here, the parties' argument turns on the plain meaning of the term "others."  Code § 18.2-387.1 provides, "Any person who, while in any public place *where others are present*, intending that he *be seen by others*, intentionally and obscenely as defined in [Code] § 18.2-372, engages in actual or explicitly simulated acts of masturbation, is guilty of a Class 1 misdemeanor."  (Emphases added).  "To determine whether statutory language is ambiguous, the Court must consider whether the text can be 'understood in more than one way or refers to two or more things simultaneously [or] whe[ther] the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness.'"  *Taylor*, 298 Va. at 342 (alterations in original) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227 n.8 (2006)).

> [A]n undefined term must be given its ordinary meaning, given the context in which it is used.  Furthermore, the plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction, and a statute should never be construed in a way that leads to absurd results.

*Id.* (alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 237 (2013)). In this instance, we find the term "others" to be plain and unambiguous. An "other" is defined as "a different or additional one, one that remains of two or more, being the one (as of two or more) remaining or not included," and "as well as the thing or person already mentioned." *Other*, Merriam-Webster, https://perma.cc/MZU4-BMJ4; *Other*, Cambridge Dictionary, https://perma.cc/UM75-ELZU. Therefore, the plain meaning of the statute suggests that an "other" would be any additional person other than the person committing the lewd act.

While Virginia appellate courts have not specifically addressed the unit of prosecution for Code § 18.2-387.1, they have interpreted the unit of prosecution for other statutes. Our courts have found that multiple prohibited acts can enable multiple prosecutions—where the legislature has *specifically identified* an action as a unit of prosecution.

For instance, Code § 18.2-58(B)(1) states "[a]ny person who *commits* robbery and *causes serious bodily injury* to or the death *of any other person* is guilty of a Class 2 felony." (Emphases added). Therefore, the correct unit of prosecution for robbery is based on the number of persons whose property is taken through force or intimidation. *See Scott v. Commonwealth*, 7 Va. App. 252, 262 (1988) ("[W]here the facts establish an intent to rob either or both of two employees, and overt acts to accomplish that intent are inflicted on each of them, two separate attempts have occurred rather than one."); *Jordan*, 2 Va. App. at 596 ("[T]he appropriate 'unit of prosecution' is determined by the number of persons from whose possession property is taken separately by force or intimidation."); *Sullivan v. Commonwealth*, 16 Va. App. 844 (1993) (finding that the defendant intimidated each employee and obtained the money through the agency of that intimidation).

Once again, Code § 18.2-282(A) states, "It shall be unlawful for any person to point, hold or brandish any firearm . . . in such a manner as to reasonably *induce fear in the mind of another*

- 9 -

of being shot or injured." (Emphasis added). The Supreme Court of Virginia upheld the defendant's three convictions for brandishing a firearm where the "gravamen of the offense is the inducement of fear in another." *Kelsoe v. Commonwealth*, 226 Va. 197, 199 (1983) (concluding that "[w]hen the defendant frightened the three men by pointing his weapon, he committed three separate crimes").

As another example, Code § 19.2-128(B) states, "[a]ny person . . . charged with *a* felony offense . . . who willfully fails to appear before any court as required is guilty of a Class 6 felony." (Emphasis added). "The plain language of [the statute] indicates that the legislature intended to establish each felony charge as the unit of prosecution for a failure to appear." *Johnson v. Commonwealth*, 292 Va. 738, 741-42 (2016). "The legislature selected the term 'a' felony, thereby indicating that each felony charge could serve as the predicate of a failure to appear conviction." *Id.* at 742 (The "General Assembly chose, with care, the words that appear in [the] statute, and [courts] must apply the statute in a manner faithful to that choice." (citing *Rives v. Commonwealth*, 284 Va. 1, 3 (2012))).

Further, Code § 18.2-248(A) provides, "[I]t shall be unlawful for any person to . . . *possess with intent* to manufacture, sell, give or distribute *a* controlled substance." (Emphases added). This Court interpreted the gravamen of the offense to be the "possession of the specified drug with the requisite intent." *Shears v. Commonwealth*, 23 Va. App. 394, 401 (1996). "Thus, each distinguishable incident of the offending conduct constitutes a 'unit of prosecution' for violation of the statute." *Id.* at 400-01 (finding that the defendant's possession of cocaine at his residence *and* at an informant's trailer constituted two possessory offenses); *see also Camann v. Commonwealth*, 79 Va. App. 427, 441 (2024) (en banc) ("[W]hatever practical inconveniences may arise when the Commonwealth seeks multiple convictions for possessing a single mixture,

we cannot dispense with the fundamental requirement for *each* conviction that knowledge is an *essential* element of the crime." (quotation marks and citation omitted)).

Moreover, Code § 18.2-46.2 provides "Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in *any predicate criminal act* committed for the benefit of, at the direction of, or in association with any criminal street gang is guilty of a Class 4 felony." (Emphasis added). "[T]he legislature's choice to use 'any predicate criminal act' means *any* single enumerated offense may serve as the predicate criminal act and does not encompass several predicate criminal acts." *Hernandez v. Commonwealth*, No. 1221-22-4, slip op. at 12-13, 2023 Va. App. LEXIS 817, at *16-17 (Dec. 12, 2023) (emphasis added) ("If the legislature had intended for only one punishment of gang activity for multiple predicate criminal acts, it would have used 'one or more predicate acts' in lieu of 'any predicate criminal act.'").[3]

Finally, Code § 18.2-374.1:1(A) states, "Any person who knowingly *possesses* child pornography is guilty of a Class 6 felony." (Emphasis added). This Court explained that a violation of the statute "involves the act of possessing child pornography—not the act of acquiring it." *Papol v. Commonwealth*, 63 Va. App. 150, 153 (2014); *cf. Chapman v. Commonwealth*, 56 Va. App. 725, 732 (2010) ("[T]he permissible unit of prosecution for the sale of obscene items under Code § 18.2-374 was the number of each such item sold, this Court held in *Mason* that 'the permissible prosecution for possession of child pornography under [the statute] corresponds to the number of individual items of sexually explicit visual material." (second alteration in original) (quoting *Mason v. Commonwealth*, 49 Va. App. 39, 48 (2006))). Consequently, it followed that the "unit of prosecution" is "the number of individual items of

---

[3] "[U]npublished opinions are not binding but can be 'considered for their persuasive value.'" *Harvey v. Commonwealth*, 76 Va. App. 436, 466 n.6 (2023) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2023)); *see also* Rule 5A:1(f).

sexually explicit visual material possessed by the defendant." *Papol*, 63 Va. App. at 153 (quoting *Chapman*, 56 Va. App. at 732).

Presently, Harris argues that the "unit of prosecution for obscene sexual display . . . is defined by the number of actual or explicitly simulated acts of masturbation." Harris contends that referencing the number of people who view the act would lead to absurd results because "tying the unit of prosecution to the number of 'others' would prevent prosecution under a scenario where no person other than the defendant witnessed the occurrence." Conversely, the Commonwealth suggests that "reading the phrases 'where others are present' and 'intending that he been seen by others' as relating to the number of victims would have the effect of prohibiting single-victim prosecutions under this statute as it would not merely permit, but require, the defendant be seen by multiple people."

Code § 18.2-387.1 provides, "Any person who, while in any public place where others are present, intending that he be seen by others, intentionally and obscenely as defined in § 18.2-372, *engages in actual or explicitly simulated acts of masturbation*, is guilty of a Class 1 misdemeanor." (Emphasis added). The gravamen of the offense—the act which is to be punished—is "engag[ing] in actual or simulated acts of masturbation." As such, the unit of prosecution is for each act or occurrence of masturbation, rather than the number of witnesses who view the act.

The Commonwealth's interpretation—that "the unit of prosecution is the number of victims who witness the lewd act"—misidentifies the conduct prohibited by Code § 18.2-387.1. The statute does not require a victim to witness the act in order to prosecute an individual. Rather, a defendant can be convicted if the Commonwealth proves the following elements: that the defendant (1) was in a public place, (2) where another person is or persons are present, (3) with the intent to be seen by others, and (4) intentionally or obscenely engaged in actual or

- 12 -

explicitly simulated acts of masturbation. Thus, the plain text of Code § 18.2-387.1 shows that an individual *act* of "actual or explicitly simulated" masturbation is the necessary *actus reas* of the offense.

Therefore, to convict Harris of two counts of obscene sexual display, the Commonwealth needed to prove that Harris committed two distinct occurrences of masturbation. Here, the evidence does not support two charges of obscene sexual display. Two women were walking on a trail to pavilion three when they observed Harris huddled off the path. They saw Harris was naked, and he turned toward them and stroked his penis "vigorously" while making eye contact with each woman. Further, the Commonwealth conceded both at trial and on appeal that the facts support that Harris committed only one occurrence of masturbation. As such, the evidence was insufficient to convict him of two counts of obscene sexual display under Code § 18.2-387.1. As a result, the trial court erred in convicting Harris of both counts of Code § 18.2-387.1, and this Court reverses his conviction of one of those counts.

## II. The trial court did not err in instructing the jury on Instruction 5.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). "The trial court has 'broad discretion in giving or denying instructions requested,' and [appellate courts] review those decisions under an abuse of discretion standard." *Barney v. Commonwealth*, 69 Va. App. 604, 609 (2019) (quoting *Gaines v. Commonwealth*, 6 Va. App. 562, 568 (2003) (en banc)). "[W]hether a jury instruction accurately states the relevant law is a question of law that [appellate courts] review de novo." *Conley*, 74 Va. App. at 675 (first alteration in original) (quoting *Watson v. Commonwealth*, 298 Va. 197, 207 (2019)). "In reviewing jury instructions, the Court's responsibility is 'to see that the law has been

clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Drexel v. Commonwealth*, 80 Va. App. 720, 742 (2024) (quoting *Ducharme v. Commonwealth*, 70 Va. App. 668, 674 (2019)). "However, jury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Payne v. Commonwealth*, 292 Va. 855, 869 (2016). "When reviewing a trial court's refusal to give a proffered jury instruction, [appellate courts] view the evidence in the light most favorable to the proponent of the instruction." *Id.*

The Supreme Court of Virginia has approved a jury instruction stating that "[i]t is permissible to infer that every person intends the natural and probable consequences of his or her acts." *Schmitt v. Commonwealth*, 262 Va. 127, 145 (2001). "[S]uch an inference '[does] not establish an improper presumption but merely state[s] a permissive inference.'" *Thomas v. Commonwealth*, 279 Va. 131, 166 (2010) (quoting *Schmitt*, 262 Va. at 145). The Supreme Court of Virginia has repeatedly rejected the argument that the "natural and probable consequences of his acts" instruction constitutionally shifts the burden of proof to the defendant. *See, e.g.*, *Tizon v. Commonwealth*, 60 Va. App. 1, 21 (2012) ("The Virginia Supreme Court has . . . repeatedly rejected the assertion that the 'natural and probable consequences of his acts' instruction unconstitutionally 'shifts the burden of proof.'"). The Commonwealth may request an instruction that it is permissible to infer that every person intends the natural and probable consequences of his or her acts "if the evidence in such a case creates an issue whether the defendant harbored any criminal intent whatsoever." *Velasquez v. Commonwealth*, 276 Va. 326, 330 (2008). Under our case law, Jury Instruction 5 is a proper jury instruction when intent is at issue.

Harris argues that Jury Instruction 5 was "irrelevant under the circumstances of this case" because "none of the acts at issue were sufficient under common experience to find a corresponding intent." We disagree. Code § 18.2-387.1 states "[a]ny person who, while in a

public place where others are present, *intending* that he be seen by others, *intentionally* or obscenely as defined in § 18.2-372, engages in actual or explicitly simulated acts of masturbation, is guilty of a Class 1 misdemeanor." (Emphases added). Intent is an essential element of the crime of making an obscene sexual display. Jury Instruction 5[4] told the jury that it could infer that Harris *intended* to be seen by others by intentionally masturbating in a public park in the middle of the day. Instruction 5 is useful in determining whether Harris had the requisite intent. On these facts, a jury could have inferred intent because Harris voluntarily exposed himself to the victims on the path while making eye contact. Thus, the trial court did not err when it granted the Commonwealth's Jury Instruction 5, and this Court affirms that decision of the trial court.

CONCLUSION

For the foregoing reasons, this Court finds that the trial court erred in convicting Harris of two counts of obscene sexual display and reverses with instruction for the trial court on remand to vacate one of Harris's convictions. This Court finds no abuse of discretion and affirms the judgment of the trial court related to the jury instructions.

*Affirmed in part, and reversed and remanded in part.*

---

[4] Jury Instruction 5 states "It is permissible to infer that every person intends the natural and probable consequences of his or her acts."

- 15 -